UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDREA SCHMITT, *et al.*, | ) |
| Plaintiffs, | ) No. C17-1611RSL |
| v. | ) |
| KAISER FOUNDATION HEALTH PLAN | ) ORDER GRANTING DEFENDANTS' |
| OF WASHINGTON, *et al.*, | ) MOTION TO DISMISS |
| Defendants. | ) |

This matter comes before the Court on "Defendants' Motion to Dismiss." Dkt. # 17.
Plaintiffs have been diagnosed with hearing loss and are insured under health plans offered by
the defendant health care service carriers. Defendants' policies exclude coverage for all
programs or treatments for hearing loss or hearing care with the exception of cochlear implants.
Plaintiffs allege that the denial of health care benefits to insureds who have hearing loss is illegal
disability discrimination under the Patient Protection and Affordable Care Act ("ACA"), 42
U.S.C. § 18116. Defendants moved to dismiss plaintiffs' claims because the hearing loss
exclusion does not discriminate between disabled and non-disabled patients (all are denied
coverage for hearing-related services other than cochlear implants) and applies equally to all
plan participants.[1]

---

[1] Defendants also argued that because plaintiff Schmitt never submitted a claim for services related to
hearing loss, she lacks standing to pursue this litigation. After the close of briefing in this matter, plaintiff

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds that plaintiffs have failed to state a claim upon which relief can be granted. Section 1557 of the ACA provides:

> [A]n individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . .

42 U.S.C. § 18116(a). Disability discrimination is prohibited under section 504 of the Rehabilitation Act, and the parties agree that the elements of a discrimination claim under the ACA are the same as those for a Rehabilitation Act claim. For purposes of a motion to dismiss, the question is whether plaintiffs have adequately alleged that (1) they are qualified individuals with a disability as defined in section 504; (2) they were excluded from participation in, denied the benefits of, or subjected to discrimination in a health program that receives federal financial assistance; and (3) the exclusion, denial, or discrimination was on the basis of their disability. Motion at 11; Response at 10. See Se. Pa. Transp. Auth. v. Gilead Sciences, Inc., 102 F. Supp.3d 688, 699 (E.D. Pa. 2015). Plaintiffs allege that their hearing loss rises to the level of a disability and that defendants' health plans were designed in such a way as to limit or exclude coverage

---

amended her complaint to add Elizabeth Mohundro as a named plaintiff. Mohundro had submitted a claim for services related to hearing loss, and the claim was denied on January 31, 2018. Because the Court will need to reach the merits regardless of Schmitt's standing, it declines to resolve that issue.

(*i.e.*, discriminate) on the basis of that disability. The Supreme Court has held that a program or benefit receiving federal funds cannot, under section 504, be defined in a way that effectively denies disabled individuals meaningful access to the program or benefit and that reasonable modifications to the program or benefit may have to be made to provide the access to which the disabled are required. The grantee need not, however, fundamentally compromise the essential nature of the program to make it accessible or guarantee equality of access. Alexander v. Choate, 469 U.S. 287, 299-304 (1985).

The ACA's implementing regulations specifically preclude discrimination in the provision or administration of health insurance on the basis of race, color, national origin, sex, age, or disability. 45 C.F.R. § 92.207(a). The regulations list specific actions that are deemed to be discriminatory:

A covered entity shall not, in providing or administering health-related insurance or other health-related coverage:

(1) Deny, cancel, limit, or refuse to issue or renew a health-related insurance plan or policy or other health-related coverage, or deny or limit coverage of a claim, or impose additional cost sharing or other limitations or restrictions on coverage, on the basis of race, color, national origin, sex, age, or disability;

(2) Have or implement marketing practices or benefit designs that discriminate on the basis of race, color, national origin, sex, age, or disability in a health-related insurance plan or policy, or other health-related coverage;

(3) Deny or limit coverage, deny or limit coverage of a claim, or impose additional cost sharing or other limitations or restrictions on coverage, for any health services that are ordinarily or exclusively available to individuals of one sex, to a transgender individual based on the fact that an individual's sex assigned at birth, gender identity, or gender otherwise recorded is different from the one to which such health services are ordinarily or exclusively available;

(4) Have or implement a categorical coverage exclusion or limitation for all health services related to gender transition; or

(5) Otherwise deny or limit coverage, deny or limit coverage of a claim, or impose additional cost sharing or other limitations or restrictions on coverage, for specific health services related to gender transition if such denial, limitation, or restriction results in discrimination against a transgender individual.

45 C.F.R. § 92.207(b).

Plaintiffs support their argument that defendants designed a benefits program that discriminates on the basis of their disability by pointing out that, although defendants pay for outpatient office visits, surgeries, and durable medical equipment for some plan participants, their claims for such benefits were or would have been denied solely because they were related to hearing loss. The argument is attractive in its simplicity: plaintiffs' claims for healthcare benefits were denied and/or limitations on coverage were imposed because of the nature of the disability for which they sought treatment, so they must be the victim of disability discrimination. The argument proves too much, however. Taken to its logical conclusion, it would compel an insurer that covers a treatment or service in a particular circumstance, such as prenatal doctor's visits or prosthetic limbs, to cover every doctor's appointment or durable medical device for every kind of condition, disorder, or illness. Under plaintiff's theory, the ACA automatically converted every healthcare policy into a top end, gold-level plan. The structure and language of the law cannot support such an interpretation.

In enacting the ACA, Congress wanted to extend health insurance coverage to the underserved and to provide more robust policies, but it did not compel insurers to cover all medical conditions or to provide all types of medical services/treatments in every policy. Where Congress determined that a type of service or treatment was "essential," it included the service or treatment in a list of ten essential health benefits ("EHBs") and mandated their coverage. The market responded to the enactment of the ACA by offering health insurance policies that covered the EHBs and met certain other ACA requirements, but the policies provided various levels of coverage with a range of deductibles. It is undisputed that hearing aids and most

hearing loss services are not included in the list of EHBs.[2] Had Congress intended to extend the scope of the benefits that an insurer must cover in every plan beyond the specified EHBs when it enacted the anti-discrimination provision of the statute, "we would expect some indication of that purpose in the statute or its legislative history. Yet there is nothing to suggest that was Congress' purpose." Choate, 469 U.S. at 299.

The Department of Health and Human Services ("DHHS") reiterated the distinction between the scope of benefits provided in the first instance - over which insurers have discretion- and the obligation to provide benefits offered in a non-discriminatory manner. In response to comments to the proposed rule making, DHHS noted:

> [W]e did not propose to require plans to cover any particular benefit or service, but we provided that a covered entity cannot have coverage that operates in a discriminatory manner. For example, the preamble stated that a plan that covers inpatient treatment for eating disorders in men but not in women would not be in compliance with the prohibition of discrimination based on sex. Similarly, a plan that covers bariatric surgery in adults but excludes such coverage for adults with particular developmental disabilities would not be in compliance with the prohibition on discrimination based on disability.

81 Fed. Reg. 31375-1, 31429 (May 18, 2016) 31429. See also Id. at 31434 (DHHS "recognizes that covered entities have discretion in developing benefit designs and determining what specific health services will be covered in the health insurance coverage or other health coverage" and declines to prohibit "categorical exclusions of all coverage related to certain conditions" other than gender transition). DHHS has specifically approved the issuance of policies that provide a limited scope of benefits or coverage for only designated diseases or illnesses. 81 Fed. Reg. at 31434. By implication, then, a plan can lawfully exclude from coverage inpatient treatment,

---

[2] The list of EHBs includes "[r]ehabilitative and habilitative services and devices" of equal scope as that provided under a typical employer plan. 42 U.S.C. § 18022(b)(1)(G) and (b)(2)(A). In Washington, the "benchmark" plan of a typical employer covers cochlear implants, but not hearing aids. WAC § 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(7)(b)(1) and (c)(4). Plaintiffs are not arguing that defendants violated the ACA by failing to cover an EHB.

prescription drugs, or office visits for a particular disorder, illness, or condition even though those services or treatments are available for other disorders, illnesses, or conditions. The Court finds that Section 1557 generally requires only that if a plan covers inpatient treatment <u>for a particular disorder</u>, it must make the services available to everyone who has that disorder regardless of their race, color, national origin, sex, age, or disability.

Plaintiffs, purporting to quote 81 Fed. Reg. at 31429, argue that any "explicit, categorical (or automatic) exclusion or limitation of coverage for all health services related to [a disability] is unlawful *on its face.*" Dkt. # 24-1 at 7 (alteration and emphasis added by plaintiffs). The alteration is material. As noted above, DHHS declined to prohibit all categorical exclusions of coverage related to specific conditions. <u>Id.</u> at 31434. The regulation DHHS is discussing in the passage quoted by plaintiffs is 45 C.F.R. § 92.207(b)(4), which precludes insurers from excluding services related to gender transition. As DHHS makes clear, a categorical exclusion of coverage for services and treatments related to gender transition constitutes discrimination on the basis of sex and is therefore prohibited. 81 Fed. Reg. at 31429. Neither this nor any other section mandates a particular scope of benefits in every healthcare plan (other than the inclusion of the EHBs) or precludes distinctions on the basis of the patients' condition, disease, or illness (other than gender transition).

That is not to say that every exclusion or limitation on the scope of benefits offered is legal. There is support in the DHHS commentary for the proposition that an exclusion or limitation would be impermissible and a violation Section 1557 if it were motivated by discriminatory intent. In evaluating whether an exclusion from or limitation on coverage for a particular type of health benefit violates 45 C.F.R. § 92.207, the agency:

> will evaluate whether a covered entity utilized, in a nondiscriminatory manner, a neutral rule or principle when deciding to adopt the design feature or take the challenged action or whether the reason for its coverage decision is a pretext for discrimination. For example, if a plan limits or denies coverage for certain services or treatment for a specific condition, [the agency] will evaluate whether coverage

> for the same or a similar service or treatment is available to individuals outside of that protected class or those with different health conditions and will evaluate the reasons for any differences in coverage. Covered entities will be expected to provide a neutral, nondiscriminatory reason for the denial or limitation that is not a pretext for discrimination.

81 Fed. Reg. at 31433. The agency also noted that "categorical exclusions of all coverage related to certain conditions could raise significant compliance concerns under Section 1557." 81 Fed. Reg. at 31434. The parties have not identified, and the Court has not found, any agency decisions that would help clarify how one determines whether an express and obviously intentional limitation on coverage for a particular medical disorder, condition, or illness were motivated by discriminatory animus. If, for example, an insurer excludes from the scope of its plan prosthetics because they cost too much, is that disability discrimination or a permissible business determination? What must plaintiff show before the insurer will be required to "provide a neutral, nondiscriminatory reason for the denial or limitation that is not a pretext for discrimination?" 81 Fed. Reg. at 31433.

The Court need not address these difficult issues given the facts of this case. Plaintiffs allege that they have been diagnosed with hearing loss and are qualified individuals with a disability for purposes of the ACA and Section 504 of the Rehabilitation Act. They argue that the denial (or foreseeable denial) of their claims for coverage for hearing loss services is on account of their disability and therefore constitutes disability discrimination. The benefits plaintiffs seek are not part of the plan in which they participate: the allegations of the complaint do not, therefore, give rise to a plausible inference that they were excluded from participation in or denied the benefits of their health plan under section 504 of the Rehabilitation Act or the ACA. The question, then, is whether plaintiffs were subjected to disability discrimination in a health program. For the reasons discussed below, the Court finds that the hearing loss exclusion, which is not designed with reference to a disability and applies to both disabled and non-disabled plan participants, does not discriminate on the basis of a disability.

The fact that a plan participant has "hearing loss" or is in need of "hearing care" does not necessarily mean that he or she is disabled. One is disabled only when his or her ability to hear is substantially limited.[3] The exclusion of most treatments and services related to hearing loss and hearing care precludes coverage for a broad array of conditions, only some of which rise to the level of a disability under governing law. While the Court accepts as true plaintiffs' allegation that they are disabled by their hearing loss, the policy at issue treats them no differently than persons who have but are not disabled by their hearing loss. Neither the disabled nor the non-disabled patient with hearing loss has coverage for most hearing care. To confuse matters even more, defendants' policy covers cochlear implants, a treatment that is medically appropriate only when the hearing loss is significant and therefore disabling. Thus, the policy at issue provides a specified hearing service for disabled participants while excluding coverage for other hearing services regardless of whether the participant is disabled or not-disabled by their hearing loss. In these circumstances, plaintiffs have failed to raise a plausible inference that the benefit design or coverage denial was motivated by their disability.[4]

For all of the foregoing reasons, plaintiffs have failed to raise a plausible inference of liability under Section 1557 of the ACA. Defendants' motion to dismiss (Dkt. # 17) is therefore

---

[3] For purposes of the ACA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities . . . ; a record of such impairment; or being regarded as having such an impairment as defined and construed" under the Rehabilitation Act and the Americans With Disabilities Act. 45 C.F.R. § 92.4. "Major life activities" include hearing. 45 C.F.R. § 84.3(j)(2)(ii).

[4] While it is true that plaintiffs' disabling hearing loss was obviously a motivating factor in the denial of coverage at issue here, it is the hearing loss itself - whether disabling or not - that triggered the coverage exclusion, not the fact that these particular plaintiffs are disabled by their hearing loss. Thus, disabled and non-disabled participants seeking hearing-related services are treated the same. See Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677-78 (8th Cir. 1996). Had defendants designed a policy that offered hearing screening tests and other services needed only by those who were not disabled by their hearing loss and excluded from coverage all services and treatments needed by those whose hearing is substantially limited, an inference of disability discrimination might arise that would shift the burden to defendant to provide a neutral, nondiscriminatory reason for the exclusion or limitation.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

GRANTED.

     Dated this 14th day of September, 2018.

                             _____
                             Robert S. Lasnik
                             United States District Judge

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS