The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREA SCHMITT; ELIZABETH MOHONDRO; and O.L. by and through her parents, J.L. and K.L., each on their own behalf, and on behalf of all similarly situated individuals,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN OF WASHINGTON; KAISER FOUNDATION HEALTH PLAN OF WASHINGTON OPTIONS, INC.; KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST; and KAISER FOUNDATION HEALTH PLAN, INC.,

Defendants.

NO.  2:17-cv-01611-RSL

**FOURTH AMENDED COMPLAINT (CLASS ACTION)**

## I.   INTRODUCTION

1.      An estimated 48 million Americans have a hearing loss that measurably interferes with their ability to understand speech. The vast majority of those people take no action – indeed, most are likely unaware that they have a deficit. Others, though, experience a reduction in their ability to undertake important daily activities, and seek

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 1
[Case No. 2:17-cv-01611-RSL]

to remedy that situation through an evaluation for, and fitting of, hearing aids and/or other treatment.

2.     Hearing aids improve health and life for many people. People who wear hearing aids do so because they find that otherwise, they are significantly limited in their ability to work, participate in daily activities or to engage socially.  They are rarely, if ever, sought unnecessarily because hearing aids are not comfortable, affordable, or stylish.  Indeed, they are highly stigmatized as associated with old age and disability. Virtually everyone who obtains professionally prescribed and fitted hearing aids is a person with a disability within the meaning of the Affordable Care Act's Section 1557, which incorporates, through Section 504, the definitions of disability found in the Americans with Disabilities Act as amended in 2008.

3.     Health policies issued by defendants Kaiser Foundation Health Plan of Washington, Kaiser Foundation Health Plan of Washington Options, Inc., Kaiser Foundation Health Plan of the Northwest, and Kaiser Foundation Health Plan, Inc. ("Kaiser") specifically exclude coverage for all treatment associated with hearing loss (*i.e.*, hearing aids, examinations and associated services) except for cochlear implants. (Hereinafter the "Hearing Loss Exclusion" or "Exclusion"). Plaintiffs initially alleged that the Exclusion violates Section 1557 of the Affordable Care Act, which bars health insurers from discriminating on the basis of disability. This Court granted defendants' motion to dismiss without leave to amend, reasoning that the Exclusion is not discriminatory because it applies both to people whose hearing loss would qualify as a disability and to people without a hearing disability.

4.     The Ninth Circuit reversed and remanded the case with a directive that plaintiffs be allowed to amend to show "that the [E]xclusion is likely to predominately affect disabled persons," *Schmitt v. Kaiser*, 965 F.3d 945, 959, n. 8 (9th Cir. 2020), and that

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 2
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

coverage for cochlear implants fails to meet the needs of most people with hearing loss. *Id.* at 959. For reasons set forth in this Amended Complaint, plaintiffs allege that virtually all people who wear professionally prescribed hearing aids are "disabled" under the pertinent federal definition, and that very few of those individuals with disabling hearing loss can have their needs met by treatment with cochlear implants.

5.     Since this case was originally filed, the Washington Legislature has passed its own broad anti-discrimination statute that applies to health care plan design, RCW 48.43.0128.   This statute prohibits all non-grandfathered health plans from discriminating on the basis of "present or predicted disability," or "health condition," in the design of benefits.  *Id.*  In 2020, the provision was expanded from individual and small group plans to all "non-grandfathered" health plans, with an effective date of June 11, 2020.  *Id.* The statute is an additional "term" of the Kaiser's health plans in Washington. *See* RCW 48.18.510.  Accordingly, plaintiffs plead an additional Breach of Contract claim due to Kaiser's ongoing violation of RCW 48.43.0128.

## II.   PARTIES

6.     ***Andrea Schmitt***.  Plaintiff Andrea Schmitt is diagnosed with disabling hearing loss.  Schmitt is insured under a Kaiser Foundation Health Plan of Washington insured health plan that was issued and delivered in King County, Washington. Schmitt's health coverage is through her employment at Columbia Legal Services, which is headquartered in Seattle, Washington.

7.     ***Elizabeth Mohundro.***  Plaintiff Elizabeth Mohundro is diagnosed with disabling hearing loss.  Mohundro was insured under a Kaiser Foundation Health Plan of Washington Options Inc. health plan that was issued and delivered in King County Washington.  Mohundro's coverage was through her employment at World Association for Children and Parents (WACAP), a nonprofit international adoption and child

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 3
[Case No. 2:17-cv-01611-RSL]

assistance agency headquartered in Renton, Washington.  On April 1, 2019, WACAP merged with another agency named Holt International Children's Services.  As a result of the merger, her health coverage was changed from Kaiser to Providence Health Plan.

8.  ***O.L. by and through her parents J.L. and K.L.***  Plaintiff O.L. is a twelve-year old child with disabling hearing loss.  O.L. is insured in a Kaiser Foundation Health Plan of Washington Options, Inc. health plan issued and delivered in Seattle, Washington through her mother's employment at Richmark Label, a Seattle label manufacturer.

9.  ***Kaiser.***  Defendants Kaiser Foundation Health Plan of Washington, Kaiser Foundation Health Plan of Washington Options, Inc. and Kaiser Foundation Health Plan of the Northwest are health care service carriers that do business in the state of Washington.  Kaiser Foundation Health Plan of Washington and Kaiser Foundation Health Plan of Washington Options do business in King County, Washington.  Based on information and belief, all three are wholly-owned subsidiaries of Kaiser Foundation Health Plan, Inc., a California nonprofit corporation.  For the purpose of this Complaint, all are referred to as a single defendant, "Kaiser."

### III.   JURISDICTION AND VENUE

10.  This action arises under the Patient Protection and Affordable Care Act ("Affordable Care Act" or "ACA") § 1557, 42 U.S.C. § 18116.

11.  Jurisdiction of this Court also arises pursuant to 28 U.S.C. §§ 1331, 1343. Jurisdiction for Plaintiffs' breach of contract claim arises under 28 U.S.C. § 1367.

12.  Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because, *inter alia*, a defendant resides or may be found in this district and a substantial part of the events giving rise to the claims occurred in King County, Washington.

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 4
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

## IV.  NATURE OF THE CASE

13.     Plaintiffs seek to end Kaiser's standard discriminatory practice of generally excluding benefits for treatment of hearing loss, except for cochlear implants. Specifically, when this lawsuit was filed, Kaiser's insured health plans in Washington contain the following benefit exclusion:

| Hearing Examinations and Hearing Aids | Preferred Provider Network | Out of Network |
|---|---|---|
| Hearing aids including hearing aid examinations. | Not covered; *Member pays 100%* of all charges | Not covered; *Member pays 100%* of all charges |
| **Exclusions:**  *Programs or treatments for hearing loss* or hearing care including, but not limited to, externally worn hearing aids or surgically implanted hearing aids and the surgery and services necessary to implant them other than for cochlear implants; hearing screening tests including but not limited to non-cochlear hearing aids (externally worn or surgically implanted) and the surgery and services necessary to implant them other than for cochlear implants; hearing screening tests required under Preventive Services. | | |

*See* Dkt. No. 18, pp. 29 of 66 (emphasis in original and added).  (In this Complaint, the condition is referred hereafter to as "Hearing Loss" and Kaiser's exclusion as the "Hearing Loss Exclusion.")  Kaiser excludes benefits for Hearing Loss even when the treatment is medically necessary to treat qualified individuals with disabilities such as the named Plaintiffs.  Kaiser applies its Hearing Loss Exclusion even though it covers the same benefits for other health conditions, including coverage of outpatient office visits and durable medical equipment or prosthetic devices.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

14. In Kaiser's 2020 health plan issued to Plaintiff Schmitt, the Exclusion is worded differently but has essentially the same effect:[1]

| Hearing Examinations and Hearing Aids | Preferred Provider Network | Out of Network |
|---|---|---|
| Hearing exams for hearing loss and evaluation and diagnostic testing for cochlear implants.<br><br>Cochlear implants or Bone Anchor Hearing Aids (BAHA) when in accordance with KFHPWAO clinical criteria.<br><br>Covered services for cochlear implants and BAHA include implant surgery, pre-implant testing, post implant follow-up, speech therapy, programming and associated supplies (such as transmitter cable and batteries). | **Hospital – Inpatient:**<br><br>After Deductible, Member pays 10% of Plan Coinsurance<br><br>**Hospital – Outpatient:**<br><br>After Deductible, Member pays 10% of Plan Coinsurance<br><br>**Outpatient Services:**<br><br>Office visits: Member pays $20 Copayment for primary care provider office visits or $35 Copayment for specialty care provider office visits<br><br>All other services including surgical services:  After Deductible, Member pays 10% Plan Coinsurance<br><br>Enhanced Benefit: | **Hospital – Inpatient:**<br><br>After Deductible, Member pays 50% Plan Coinsurance<br><br>**Hospital – Outpatient:**<br><br>After Deductible, Member pays 50% of Plan Coinsurance |

---

[1] The key difference is that in the 2020 Kaiser plan, Kaiser now covers Bone Anchored Hearing Aids ("BAHAs") in addition to cochlear implants.  *See Appendix A*, p. 28.

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 6
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

|  | Office visits: Member pays $10 Copayment for primary care Provide office visits or $25 Copayment for specialty care provider office visits<br><br>Deductible and coinsurance do not apply to primary and specialty care office visits<br><br>All other services, including surgical services, After Deductible, Member pays 10% Plan Coinsurance |  |
|---|---|---|
| Hearing aids including hearing aid examinations | Not covered; Member pays 100% of all charges | Not covered; Member pays 100% of all charges |
| **Exclusions**: Hearing care, routine hearing examinations, programs or treatments for hearing loss including but not limited to, externally worn hearing aids or surgically implanted hearing aids, and the surgery and services necessary to implant them except as described above, and hearing screening tests required under Preventive Services. | | |

*See Appendix A,* pp. 28-29.   Kaiser excludes benefits for Hearing Loss even when the treatment is medically necessary to treat qualified individuals with disabilities such as the named Plaintiffs.   Kaiser applies its Hearing Loss Exclusion even though it covers the same benefits for other health conditions, including coverage of outpatient office visits and durable medical equipment or prosthetic devices.

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 7
[Case No. 2:17-cv-01611-RSL]

15.     By excluding coverage of all treatment for hearing loss (except for cochlear implants and, according to the 2020 Kaiser Plan, BAHAs), Kaiser engages in illegal disability discrimination.  The Affordable Care Act prohibits discrimination on the basis of disability by covered entities, including health insurers like Kaiser.  *See* 42 U.S.C. § 18116.  Specifically, Section 1557 provides that "an individual shall not, on the ground prohibited under … Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) be excluded from participation in, *denied the benefits of* or be subjected to discrimination under *any health program* or activity…." 42 U.S.C. § 18116(a) (emphasis added).

16.     Kaiser is a covered "health program or activity" that must comply with the Affordable Care Act's § 1557.

17.     Kaiser violates § 1557 and engages in illegal discrimination on the basis of disability by designing its health plans to include the Hearing Loss Exclusion.

18.     Kaiser's Hearing Loss Exclusion was an intentional, deliberate act.  It was done without evaluating the service for efficacy, medical necessity or whether it is experimental or investigational, as Kaiser does with other excluded services.

19.     This lawsuit seeks remedies under the Affordable Care Act arising out of Kaiser's failure to comply with § 1557.  It seeks a court order declaring Kaiser's Hearing Loss Exclusion void and unenforceable, enjoining Kaiser from continuing to apply the Exclusion and requiring corrective notice to all Kaiser insureds concerning its required coverage of Hearing Loss.  It also seeks damages stemming from Kaiser's deliberate discriminatory exclusion of medically necessary care that, but for the application of its Exclusion, would otherwise be covered.

20.     Kaiser's Hearing Loss Exclusion also violates Washington's "mini-Section 1557," RCW 48.43.0128.  The Washington statute prohibits Kaiser from applying in its non-grandfathered health plans any benefit design that discriminates on the basis of

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

disability or health condition.  *Id.*  This state law enters into the Kaiser contracts of insurance and eliminates all non-conforming terms, such as the Hearing Loss Exclusion. RCW 48.18.510.

21.     This lawsuit also alleges that Kaiser breached its contract with Plaintiffs and the proposed class when it failed to modify its non-grandfathered health plans, including those in which Plaintiffs are enrolled, to comply with RCW 48.43.0128, by eliminating the Hearing Loss Exclusion.

## V.   CLASS ALLEGATIONS

22.     ***Definition of Class***.  The class consists of all individuals who:

> (1)  have been, are or will be insured under a health insurance plan that has been, is or will be delivered, issued for delivery, or renewed by (a) Kaiser; (b) any affiliate of Kaiser; (c) predecessors or successors in interest of any of the foregoing; and (d) all subsidiaries or parent entities of any of the foregoing, at any time on or after October 30, 2014 and excluding Medicare Advantage plans; and

> (2)  have required, require or will require treatment for Hearing Loss other than treatment associated with cochlear implants, or treatment associated with Bone Anchored Hearing Aids (BAHAs) after Kaiser began to provide coverage for BAHAs.

23.     ***Size of Class***.  The class of Kaiser insureds who have required, require or will require treatment for Hearing Loss, excluding treatment associated with cochlear implants and for BAHAs, after Kaiser began providing such coverage, is so numerous that joinder of all members is impracticable.

24.     ***Class Representatives Schmitt, Mohundro and O.L.***  At all relevant times, named plaintiffs Schmitt, Mohundro and O.L. were enrollees in a Kaiser insured health plan in the State of Washington.  Plaintiffs Schmitt and O.L. remain enrolled in a Kaiser insured health plan.  All have disabling Hearing Loss that requires treatment other than

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

with cochlear implants or BAHAs.  All are "qualified individuals with a disability" under the Affordable Care Act and Section 504 of the Rehabilitation Act.  All require outpatient office visits (such as to licensed audiologists) and durable medical equipment and/or prosthetic devices (such as hearing aids) to treat their Hearing Loss.  Consistent with the written language of the policy, Kaiser confirmed to each Plaintiff that they had no coverage for all benefits for Hearing Loss (except that related to cochlear implants) including coverage of hearing aids and outpatient office visits to the audiologist because of Kaiser's Hearing Loss Exclusion.  Nonetheless, Plaintiffs Mohundro and O.L. presented claims for treatment for hearing loss to Kaiser, which were denied by Kaiser under the Hearing Loss Exclusion.  Plaintiffs' claims are typical of the claims of the other members of the class.  Plaintiffs Schmitt, Mohundro and O.L., by and through her parents J.L. and K.L. will fairly and adequately represent the interests of the class.

25.      ***Common Questions of Law and Fact***.  This action requires a determination of whether Kaiser's Hearing Loss Exclusion violates the requirements of the Affordable Care Act's § 1557 and discriminates against Plaintiffs on the basis of their disability, Hearing Loss.  Adjudication of this issue will in turn determine whether Kaiser may be enjoined from enforcing the Hearing Loss Exclusion, and found liable under the Affordable Care Act for injunctive relief, classwide damages and other relief.  This action further requires a determination of whether Kaiser's Hearing Loss Exclusion violates the requirements of RCW 48.43.0128 and discriminates against Plaintiffs on the basis of their disability.  Finally, this action requires a determination of whether Kaiser breached its contracts with Plaintiffs and the class by designing and applying a written exclusion that is rendered void and unenforceable by RCW 48.18.200(2), RCW 48.43.0128, and other Washington law.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

26. *Kaiser Has Acted on Grounds Generally Applicable to the Class.*  Kaiser, by imposing a uniform exclusion of all coverage for Hearing Loss except for cochlear implants and BAHAs, after Kaiser began providing such coverage, has acted on grounds generally applicable to the class, rendering declaratory relief appropriate respecting the whole class.  Certification is therefore proper under FRCP 23(b)(2).

27. *Questions of Law and Fact Common to the Class Predominate Over Individual Issues.*  The claims of the individual class members are more efficiently adjudicated on a classwide basis.  Any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism.  Upon information and belief, there has been no class action suit filed against these defendants for the relief requested in this action.  This action can be most efficiently prosecuted as a class action in the Western District of Washington, where several of the Kaiser defendants have their principal place of business, do business, and where the disputed health insurance plans were issued.  Plaintiffs also reside in the Western District of Washington.  Issues as to Kaiser's conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the class.  Certification is therefore additionally proper under FRCP 23(b)(3).

28. *Class Counsel*.  Plaintiffs have retained experienced and competent class counsel.

## VI.   FACTUAL BACKGROUND

**A.    Kaiser's Hearing Loss Exclusion Predominately Affects Disabled Persons**

### 1.    Hearing Aids Under Washington Law

29. Washington state law defines "hearing instrument," as "any wearable prosthetic instrument or device designed for or represented as aiding, improving,

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 11
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

compensating for, or correcting defective human hearing and any parts, attachments, or accessories of such an instrument or device," RCW 18.35.010(12). "Hearing instruments" are different from volume-amplifying "assistive listening systems," RCW 18.35.010(1). Hearing aids are "hearing instruments" within the meaning of Washington law.

30.     The fitting and dispensing of hearing instruments is limited by law to licensed audiologists and licensed hearing-aid specialists. RCW 18.35.020. Audiologists must have doctoral-level education and experience, https://www.doh.wa.gov/ LicensesPermitsandCertificates/ProfessionsNewRenewOrUpdate/Audiologist/License Requirements (last visited 10/9/20) Hearing-aid specialists must have two years of college-level education plus supervised experience, RCW 18.35.040, and pass a state-mandated examination, RCW 18.35.070. Both licensed audiologists and hearing-aid specialists are defined as "hearing health care professionals." RCW 18.35.010(11).

31.     For purposes of this Complaint, "hearing instrument" and "hearing aid" are used interchangeably to mean devices prescribed by hearing health-care professionals, and do not include self-prescribed and self-fitted products such as Personal Sound Amplification Products (PSAPs) or over-the-counter products marketed as "hearing aids."

### 2.     The Definition of Disability Under Federal and State Law

32.     For purposes of § 1557, disability" is defined and construed according to Section 504 of the Rehabilitation Act, which, in turn "incorporates the definition of disability in the Americans with Disabilities Act (ADA), as amended." 45 C.F.R. § 92.102(c).

33.     The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended in 2008, defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities *of such individual*," 42 U.S.C. § 12102(1)(A) (emphasis

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

added), a singular and specific reference to activities actually undertaken by the individual in question.

34.     "Major life activities" include, among other things, "hearing, communicating and working." 42 U.S.C. § 12102(2)(A).

35.     The presence of a disability is to be assessed "without regard to the ameliorative effects of mitigating measures such as … hearing aids or cochlear implants." 42 U.S.C. § 12102(4)(E)(i)(I). The question in assessing a hearing disability under the ADA is not what the person can do with hearing aids, but rather, what the person *cannot do without* hearing aids.

36.     The applicable regulations state that the term "substantially limits" is to be construed "broadly," is not meant to be a "demanding standard," 29 C.F.R. § 1630.2(j)(1)(i).

37.     The definition of "disability" under Washington law is broader than the ADA definition.  *See* RCW 49.60.040(7)(a) ("Disability means the presence of a sensory, mental or physical impairment that: (i) [i]s medically cognizable or diagnosable; or (ii) [e]xists as a record or history; or (iii) [i]s perceived to exist whether or not it exists in fact.").

38.     Under Washington law, a diagnosis with hearing loss is a "disability" because it is a physiological disorder or condition that affects the body systems listed in RCW 49.60.040(7)(c)(i).  *See Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d 611, 617, 444 P.3d 606 (2019).

39.     Under both the federal and Washington definitions of "disability," Plaintiffs Schmitt, Mohundro and O.L.  are "disabled" due to their hearing loss.

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington  98121
Tel. (206) 223-0303   Fax (206) 223-0246

3.      **Hearing and Hearing Loss**

40.      Hearing involves a complex process by which sound waves are converted to vibrations that are transmitted through the eardrum to the middle-ear bones, then to the fluid-filled cochlea in the inner ear. The cochlea contains tiny hair cells that respond to specific frequencies and emit microscopic electrical impulses to the auditory nerve, from which the brain decodes the sound. https://www.asha.org/public/hearing/How-We-Hear/ (last visited 10/13/20).  Hearing loss is the result of damage to one or more of those components. https://www.asha.org/public/hearing/Types-of-Hearing-Loss/. (last visited 10/13/20).

41.      A common preliminary screening for hearing loss is a pure-tone test, in which subjects are presented with tones at different frequencies (pitches), measured in Hertzes (Hz), at increasing volume, measured in decibels (dB). The subjects are asked to indicate when they hear those tones. The threshold loudness at which a tone becomes audible is recorded on an audiogram. https://www.asha.org/public/hearing/audiogram/ (last visited 10/13/20).

42.      The critical metric from an audiogram is the average decibel threshold in the frequencies involving speech, which are the frequencies of 500, 1,000, 2,000 and 4,000 cycles per second, measured in Hertzes (Hz).

43.      The generally accepted standard for normal hearing is a threshold of 25 dB. If the tones must be louder than 25dB to be audible, the subject has worse-than-normal hearing. An average decibel threshold greater than 25 dB in the speech frequencies is generally considered the point at which "hearing loss begins to impair communication in daily life," Lin, et al., *Hearing Loss Prevalence in the United States,* Archives of Internal Medicine Vol. 14, No. 20 at pp. 1831-32, Nov. 14 (2011). https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/1106004 (last visited 10/13/20). Extrapolating from actual audiograms of a large and randomly selected population, Lin

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

et al. estimate that 48 million Americans age 12 and over have impairing hearing loss in at least one ear. The prevalence of hearing loss, and particularly sensorineural hearing loss ("SNHL"), is age-related, increasing from relatively small numbers in the 12-19 age band (approximately 100,000 people nationally) to 5.7 million people age 60-69. *Id.*

44.     Based on information and belief, the proposed class includes few if any individuals over the age of 65, since most, if not all, of Washington insured Kaiser enrollees lose their private Kaiser coverage when they become eligible for Medicare, even if they transfer to a Kaiser Medicare Advantage plan.

45.     There are varying degrees of hearing loss, ranging from mild to profound. An individual with a speech-frequency average decibel threshold of 25-40 dB is classified as having a mild loss, and may have some difficulty hearing softly voiced sounds. A person with a moderate loss (40-70dB) will have difficulty understanding speech at normal levels, a person with a severe loss (70-90dB) will hear almost no speech and a person with a profound loss (greater then 90dB) will hear almost nothing. https://www.cdc.gov/ncbddd/hearingloss/types.html (last visited 10/13/20).

46.     Most people significantly underestimate their own degree of hearing loss because they have no way of knowing what they are not hearing, unless informed by others. Based on self-reports from large-sample interviews, the U.S. Census Bureau estimates that just under 9.2 million Americans under age 65 self-reported having "serious" difficulty hearing, including 3.6 million adults who self-report as being deaf. https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf (last visited 10/13/20) (explanatory text at p.7 and charts on pp. 21 (adults) and 31 (children)).

47.     The most common form of hearing loss is sensorineural hearing loss ("SNHL"), in which the inner-ear hair cells are damaged. https://www.asha.org/

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 15
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

public/hearing/Sensorineural-Hearing-Loss/ (last visited 10/13/20).  That damage is generally not correctible through surgery or medication, and can be mitigated only through hearing aids or, in extreme cases, cochlear implants.  *See* https://www.hearingloss.org/hearing-help/hearing-loss-basics/types-causes-and-treatment/ (last visited 10/13/20). Schmitt, Mohundro and O.L. have SNHL.

48.     Conductive hearing loss occurs when damage to the outer or middle ear prevents sound from reaching the inner ear.  https://www.asha.org/public/hearing/Conductive-Hearing-Loss/ (last visited 10/13/20).   Conductive hearing loss can sometimes be corrected surgically, or can be addressed with a bone-anchored hearing aid (BAHA), which bypasses the damaged middle-ear structures and transmits sound directly to the cochlea and the hair cells.  https://www.hopkinsmedicine.org/otolaryngology/specialty_areas/hearing/hearing-aids/baha.html         (last visited 10/13/20).

49.     Some people are diagnosed with both SNHL and conductive hearing loss. *See* https://www.healthyhearing.com/help/hearing-loss/types (last visited 10/13/20).

## 4.     Hearing Aids

50.     Even people who acknowledge having "serious" hearing difficulties resist hearing aids, particularly people under 65. According to the Census Bureau, only 2.354 million people under 65 – about 25% of the 9.2 million people who self-report serious hearing difficulties – have used hearing aids.  https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf, (last visited 10/13/20) (pp. 21 (children) and 31 (adults)).

51.     The Hearing Industry Association, the trade group for hearing-aid manufacturers and distributors, conducts an annual survey of its members that asks, among other things, why people do or do not purchase hearing aids. The most recent

survey indicates that in addition to cost concerns, people avoid hearing aids because they consider hearing aids uncomfortable, unattractive and embarrassing, and because they believe their hearing is adequate. https://www.audiologyonline.com/articles/20q-understanding-today-s-consumers-26648, (last visited 10/13/20) (20Q Consumer Insights, item #4).

52.     People who believe their hearing is adequate for their purposes, even if their hearing is in fact impaired, have made a determination that their own major life activities are not substantially limited by their hearing loss. They are therefore not people with disabilities within the meaning of the Section 504 and ACA irrespective of their actual degree of hearing loss. Conversely, virtually all people who seek or obtain hearing aids do so because they have experienced limitations in their own life activities, such as hearing, communicating, learning or working, which experiences make them people with disabilities under Section 504 and ACA.

53.     The needs of hearing disabled persons differ from the needs of persons whose hearing is merely impaired.  Those who are disabled by their hearing loss experience its impact on their work, health and/or other daily activities of living.  They seek treatment from hearing health care professionals to ameliorate their disabling condition.

54.     Conversely, those whose hearing is impaired, but does not interfere with their major life activities, do not generally seek formal treatment from medical professionals, and rarely, if ever, seek hearing instruments.

55.     Self-described and self-fitted hearing products not recommended by a hearing health care professional would fall within Kaiser's exclusion for devices or treatment that is not "medically necessary," which includes treatment provided (1) "primarily for the convenience of the patient," (2) in the most appropriate level of

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

service or supply which can be safely provided to the Member, (3) are appropriate and consistent with the diagnosis and which, in accordance with accepted medical standards in the State of Washington, could not be omitted without adversely affecting the Member's condition. Dkt. No. 18-1, p. 63 of 66; *See Appendix A*, pp. 75-76

56. Thus, based upon the above data, and information and belief, if any non-disabled enrollees with hearing loss seek coverage of hearing examinations and/or hearing aids, and they meet Kaiser's medical necessity standards but are still subject to denial of their claims under Kaiser's Hearing Loss Exclusion, the number of those enrollees is extremely small, if they exist at all.

57. Excluding coverage for hearing aids and hearing treatment exclusively or almost exclusively affects people with disabling hearing loss as defined by both Section 504, Section 1557 of ACA and RCW 48.43.0128.

58. Based upon the above information and information and belief, Kaiser's Hearing Loss Exclusion is rarely, if ever, applied to medically necessary claims submitted by non-disabled Kaiser enrollees.  On information and belief, the internal records of Kaiser's denial of claim under the Hearing Loss Exclusion will show that most, if not all, individuals denied are disabled for the reasons set forth herein.

59. Even if the Hearing Loss Exclusion is applied to claims submitted by non-disabled enrollees, Kaiser designed the Exclusion intentionally to deny services to insureds with disabling hearing loss.

60. Given Kaiser's existing Medical Necessity definition which prohibits coverage that is not consistent with general medical standards, the only purpose of the Hearing Loss Exclusion is to eliminate coverage of medically necessary hearing treatment and equipment, *e.g.*, the precise coverage needed by those disabled by hearing loss.

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 18
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

61.     The design of the Hearing Loss Exclusion, uniquely and specifically targeted at insureds with disabling hearing loss, was an intentional decision made by Kaiser to ensure that the treatment needed by disabled insureds that would not be denied under the medical necessity requirement, would nonetheless be excluded.

62.     The cost of hearing evaluations and hearing aids is relatively inexpensive when compared to other treatment, including cochlear implants and BAHAs. The average cost for hearing aids and associated services, including diagnosis, fitting and adjustments, is less than $2,400 per hearing aid. https://www.hearingtracker.com/how-much-do-hearing-aids-cost (last visited 10/19/20). Cochlear implant costs, including the device and the surgery, range from $50,000 to $100,000, depending on the hospital where the implantation is performed and the features of the particular implant. https://health.costhelper.com/cochlear-implant.html (last visited 10/19/20). The average cost of the surgery for a BAHA, and the sound processor is between $15,000-$25,000. https://www.healthyhearing.com/help/hearing-aids/bone-anchored (last visited 10/19/20).

63.     In 2018, Washington's Medicaid program added coverage of hearing aids and hearing examinations for adults. *See* Washington Health Care Authority Fiscal Note for House Bill No. 1264 (2018), at https://fortress.wa.gov/FNSPublicSearch/GetPDF?packageID=47296 (last visited 10/12/20). Adding the benefit for nearly 1 million enrollees cost approximately $4 million annually, or just $0.33 per person per month. *Id.*

**B.      Cochlear Implants and BAHAs Do Not Serve the Needs of Most Individuals With a Hearing Disability.**

64.     A cochlear implant ("CI") is a mitigating measure for a limited class of people with severe to profound SNHL. A CI bypasses the damaged hair cells in the inner

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

ear. A CI consists of an external microphone and processor that send electronic signals to an array of electrodes embedded in a filament that is threaded into the cochlea. Those electrodes substitute for the damaged hair cells by sending electronic impulses directly to the auditory nerve, creating a sensation of sound.  https://www.mayoclinic.org/tests-procedures/cochlear-implants/about/pac-20385021 (last visited 10/13/20).

65.    The implantation is done under general anesthesia, often but not always on an outpatient basis. The recipient must undertake a considerable effort at rehabilitation to enable the brain to make sense of the information received through the implant and "translate" it into recognizable sound.

66.    CI is only available to people with severe to profound hearing loss who cannot be adequately treated with hearing aids.  https://bulletin.entnet.org/article/cochlear-implantation-who-is-a-candidate-in-2018/ (last visited 10/13/20).

67.    Using the same data as the prevalence estimate referenced in ¶44, Goman and Lin determined the national prevalence of hearing loss by severity.  *See **Appendix B**, Adele M. Goman, Ph.D., Frank R. Lin, M.D., Ph.D., "Prevalence of Hearing Loss by Severity in the United States," AJPH October 2016, Vol. 106, No. 10.  They determined that 340,000 people age 12-59 have severe or profound losses, as do 360,000 people aged 60-69.  Making the extremely conservative assumption that half of the people in the 60-69 age group are under 65, that would indicate that roughly 520,000 people under 65 would be potentially eligible for a CI, or just 5.6% of the 9.2 million people under 65 with self-reported hearing losses.

68.    Cochlear-implant usage in practice is far less than the number of people who might be eligible. As of 2012, the last year for which data has been located, the National Institute on Deafness and Communication Disorders found that only 58,000 U.S. adults had cochlear implants, just over 10% of those who might be eligible.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

https://www.nidcd.nih.gov/health/statistics/quick-statistics-hearing#:~:text=One%20in%20eight%20people%20in,based%20on%20standard%20hearing%20examinations.&text=About%202%20percent%20of%20adults,adults%20aged%2055%20to%2064 (last visited 10/13/20).

69.     Cochlear-implant usage in children is higher – the NIDCD reported that 38,000 children under 18 have been implanted, or 3.2% of the 1,176,000 children with self-reported hearing loss. As the NIDCD stated, implantation is more aggressive with children because of the importance of providing access to sound during the years that speech develops.

70.     Based on the data, cochlear implants treat the needs of only a very small fraction of the total population of people with hearing loss.  As a result, Kaiser's coverage of cochlear implants serves only a very small percentage of its enrollees with disabling Hearing Loss.  The inclusion of coverage for cochlear implants does not serve the needs of hearing disabled people as a group.

71.     Similarly, BAHAs meet the needs of only a tiny portion of hearing disabled enrollees.  It is a treatment for conductive and mixed hearing loss, as well as unilateral SNHL.     https://www.evms.edu/patient_care/specialties/ent_surgeons/services/otology/patient_education/bone_anchored_hearing_aids_baha/ (last visited 10/20/20).

72.     BAHAs meet the needs of only a tiny portion of hearing disabled enrollees. Current estimates are that 75,000 Americans have received BAHAs. *Id.*  There is no breakdown of BAHA recipients by age. Based on the Census Bureau estimates that over 18 million Americans of all ages self-report serious hearing loss, fewer than 1% treat that condition using BAHAs.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

73.     Of the estimated 18 million Americans of all ages who self-report serious hearing loss, only 171,000 – less than 1% – are currently being treated by either CIs or BAHA hearing aids. By comparison, according to the Census Bureau, some 8.3 million Americans of all ages use hearing aids. Based on those numbers, CIs and BAHA hearing aids together account for just over 2% of treatments for hearing loss. https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf (last visited 10/14/20) (explanatory text at p.7 and charts on pp. 21 (adults) and 31 (children)).

**C.     Plaintiffs' Need for Hearing Treatment**

74.     Plaintiff Schmitt has a significant loss in the higher frequencies, and is therefore unable to hear softly voiced consonant sounds like p, h, sh, ch, k, t, f, s and th. She hears vowel sounds at normal volume, but without hearing many of the consonants, she is unable to understand speech without her hearing aids.

75.     Without her hearing aids, Schmitt is significantly limited in the major life activity of hearing. Among other things, she cannot understand her four-year-old child, hear her baby crying in the next room, have any conversations in a moving car, carry on a conversation in a noisy situation such as a busy restaurant, use the phone, hear a smoke alarm or any kind of warning beep, understand people speaking in a darkened room, use a drive-through window or go to a movie theater, live theater or concert and understand what is being said.

76.     Without her hearing aids, Schmitt is significantly limited in the major life activity of working. She is an attorney with Columbia Legal Services, and works primarily with low-wage immigrants. Without hearing aids, she cannot participate in telephone conferences or remote proceedings, is extremely limited in a courtroom, cannot attend seminars or large meetings, cannot participate in group discussions,

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

cannot speak Spanish to her clients either in person or over the telephone, cannot observe or participate in legislative committee hearings and cannot review audio recordings.

77.     Schmitt got her first pair of hearing aids at age 16 when her mother observed that Schmitt could not hear in the car even though her friends could. Schmitt tried to participate in debate, but had great difficulty keeping up. She quit playing the violin, again because she couldn't keep up with the other students. She realized she had trouble hearing on the phone.  As a result of those limitations, she got hearing aids and has used them ever since.

78.     Plaintiff Mohundro works as an international adoption counselor. Like Schmitt, she has a high- and mid-frequency hearing loss that makes it difficult for her to hear consonants and understand speech.

79.     Without her hearing aids, Mohundro is limited in the major life activity of hearing. She cannot understand her children's speech, cannot understand speech in a moving car or in a crowded place, and cannot tell that someone is speaking to her unless they initially attract her attention. She cannot hear warning beeps.

80.     Without her hearing aids, Mohundro is limited in major life activities including her work. Much of her work is over the phone, and she cannot consistently follow conversations on the phone without her hearing aids. Without her aids, she cannot participate in group conversations or conversations in a noisy environment.

81.     Mohundro got hearing aids at age 13 after failing hearing tests at school. She had considerable difficulties socially beginning in roughly fifth grade because she couldn't participate fully in conversations.  Other children thought she was ignoring them when they spoke, and her friends found it annoying that they had to repeat themselves so often when speaking to her.

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 23
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

82.     Plaintiff O.L. has bilateral sloping moderate to severe hearing loss. Newborn hearing screenings from birth through 12 months were inconclusive, but her parents suspected that she had some hearing loss.  She was diagnosed with hearing loss after undergoing a sedated procedure to evaluate her hearing at Seattle Children's Hospital when she was 14 months old.  She received her first hearing aids one month later.

83.     Plaintiff O.L. wears her hearing aids all day, during all activities and at home.  She uses the FM system at school and receives other educational accommodations.  She is enrolled at TOPS K-8 with a cohort of deaf and hard of hearing students as well as typical hearing students and attends classes where there are sign language interpreters.  Although there are sign language interpreters in her classroom, Plaintiff O.L. is a beginning learner of sign language; it is not her main method of communication.

84.     Plaintiff O.L. wears hearing aids full time but even with her hearing aids, she misunderstands approximately 20% of the words spoken.  Without her hearing aids, she mishears approximately 40-50% of spoken words, and she can only have a conversation with people who are physically close to her and facing her while speaking. She has to work quite hard to keep up with her peers due solely to her hearing loss.

85.      Without hearing aids she would not be able to participate successfully in school or other group activities because she would be unable to hear most of the communication.  Loss of access to hearing aids would further impact her development, health and safety.  For example, her uncorrected hearing is so limited that she cannot hear a fire alarm or talk on the telephone without hearing aids.

86.     Plaintiff O.L.'s hearing aids and hearing evaluations have been repeatedly denied by Kaiser.  For example, in 2019 and 2020, coverage for Plaintiff O.L.'s annual

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 24
[Case No. 2:17-cv-01611-RSL]

hearing evaluation at Seattle Children's Hospital was denied, in whole or in part, due to Kaiser's Hearing Loss Exclusion.  Both Kaiser explanations of benefits in 2019 and 2020 referenced the code "071."  The 2019 explanation of benefits further states the following reason for denial of coverage:  "071 – THE SERVICE REPORTED IS NOT A COVERED SERVICE UNDER YOUR CONTRACT."

87.     Plaintiff O.L. requires a new pair of hearing aids in 2020.  Plaintiff and her parents expect Kaiser to deny coverage of the claims for her new hearing aids based upon the exclusion of coverage in their Kaiser plan.

88.     All three Plaintiffs are disabled under federal and state law.

**D.     Class-wide Allegations**

89.     During the relevant time periods, Schmitt, Mohundro, O.L. and members of the class have been insured in one or more Kaiser insured plans.

90.     Plaintiffs Schmitt, Mohundro, O.L., and other members of the class have been diagnosed with Hearing Loss, a physical impairment that limits a major life activity so substantially as to require medical treatment.  As a result, Schmitt, Mohundro and other members of the class are "qualified individuals with a disability." *See* 28 C.F.R. § 39.103.

91.     Plaintiffs Schmitt, Mohundro, O.L., and other members of the class have required, require and/or will require medical treatment for their Hearing Loss, excluding treatment with cochlear implants.

92.     Kaiser is a "health program or activity" part of which receives federal financial assistance.  42 U.S.C. § 18116; 45 C.F.R. § 92.4.

93.     As a result, Kaiser is a "covered entity" under the Affordable Care Act, § 1557.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

94.     Kaiser provided assurances to the U.S. Department of Health and Human Services that it complies with the requirements of § 1557.  *See* 45 C.F.R. § 92.5.

95.     It also provided similar statements to its Washington insured enrollees, confirming that it complies with the requirements of § 1557.

96.     Despite these statements and assurances, Kaiser has designed, issued and administered Washington health plans that exclude all benefits for Hearing Loss, except for cochlear implants and BAHAs, to the extent Kaiser provided such coverage.  Kaiser continues to do so, to date.

97.     The Kaiser health plans in which Plaintiffs were and Schmitt and O.L. presently are enrolled are "non-grandfathered health plans" as described in the Washington Insurance Code.

98.     Kaiser's non-grandfathered insured health plans must comply with the requirements of RCW 48.43.0128.

99.     Based upon the Hearing Loss Exclusion, Kaiser has a standard policy of denying coverage of medically necessary treatment and equipment for Schmitt, Mohundro and other members of the class, because the requested treatment and equipment would treat their diagnosed condition of Hearing Loss, and/or the treatment they seek is for "hearing treatment" and "hearing aids" such that the Exclusion is a form of intentional proxy discrimination.

100.    Specifically, Kaiser designed the Hearing Loss Exclusion to target the health care needs of insureds with disabling hearing loss.

101.    Non-disabled insureds rarely seek treatment for hearing loss.  To the extent such insureds seek such treatment, their claims are already excluded under Kaiser's medical necessity exclusion.  Only disabled insureds with hearing loss are denied medically necessary treatment for their condition under the Hearing Loss Exclusion.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

102.    Kaiser does not meet the needs of disabled enrollees with hearing loss by permitting limited coverage for cochlear implants, and BAHAs, to the extent Kaiser provided such coverage.  As alleged above, cochlear implants and BAHAs only serve the needs of a small percentage of Kaiser's disabled insureds with hearing loss (approximately 5% or fewer).

103.    As a result of its deliberate discriminatory actions, Kaiser insureds with disabling Hearing Loss, like Schmitt, Mohundro, and O.L., do not receive coverage for medically necessary outpatient office visits to audiologists or for medically necessary hearing aids, a type of durable medical equipment or prosthetic device.

104.    Kaiser excludes all coverage for outpatient office visits and durable medical equipment to treat Hearing Loss, even though it covers outpatient office visits, durable medical equipment and prosthetic devices for other medical conditions.

105.    The application of Kaiser's Hearing Loss Exclusion denies individuals with disabling Hearing Loss the benefits and health coverage available to other insureds, based on their disability, Hearing Loss.

106.    As a direct result, Plaintiffs Schmitt, Mohundro, O.L., and members of the class have paid out-of-pocket for medically necessary treatment for their Hearing Loss, including audiology examinations and hearing aids.  Other class members have been forced to forgo needed medical treatment due to Kaiser's conduct.

107.    No administrative appeal is required before this § 1557 claim may be brought.  *See* 45 C.F.R. § 92.301(a); 81 Fed. Reg. 31441.  In any event, such an appeal would be futile given Kaiser's clearly articulated position.  *See Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

## VII.  CLAIMS FOR RELIEF:

**COUNT I – VIOLATION OF AFFORDABLE CARE ACT § 1557, 42 U.S.C. § 18116**

108.    Plaintiffs re-allege all paragraphs above.

109.    Section 1557, 42 U.S.C. § 18116 provides that "an individual shall not, on the ground prohibited under … section 504 of the Rehabilitation Act of 1973 … be excluded from participation in, denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance…."

110.    Defendants receive federal financial assistance and are therefore a "covered entity" for purposes of Section 1557.

111.    Plaintiffs are "qualified persons with a disability" under both Section 504 and Section 1557.

112.    Persons like Schmitt, Mohundro and O.L. who have disabling hearing loss are discriminated against by Kaiser because it applies the Hearing Loss Exclusion to deny coverage of medically necessary audiological examinations, a type of out-patient office visit, and coverage of medically necessary hearing aids, a type of durable medical equipment or prosthetic device.  Under the exclusion, only or predominantly people with disabling Hearing Loss, a qualifying disability, are denied access to the benefits that they require.  Out-patient office visits and durable medical equipment/prosthetic devices are covered for many other health conditions under Kaiser's policies.

113.    As described above, Kaiser's Hearing Loss Exclusion treats "hearing loss" as a proxy for disabling hearing loss, since the vast majority of treatment sought by hearing-disabled enrollees is excluded and few, if any, non-disabled Kaiser enrollees are subject to the Hearing Loss Exclusion.

114.    Also, as alleged above, only a very small percentage of disabled hearing loss enrollees receive the treatment they need in the form of cochlear implants or BAHAs.

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 28
[Case No. 2:17-cv-01611-RSL]

115.    Accordingly, the Hearing Loss Exclusion is a form of proxy discrimination since the "fit" between the Hearing Loss Exclusion and disabling hearing loss is "sufficiently close" to make a discriminatory inference plausible. *See Schmitt,* 965 F.3d at 958-959.

116.    The drafting and inclusion of the Hearing Loss Exclusion was an inherently intentional act.  It was done for the purpose of excluding coverage for insureds with disabling hearing loss since coverage for insureds with non-disabling hearing loss would be excluded under Kaiser's medical necessity clause.  Kaiser understood that the only way to exclude ***medically necessary*** services and supplies for hearing loss – services and supplies that would only be provided to disabled insureds –  was to put in place the broad Hearing Loss Exclusion.

117.    The design and administration of the Hearing Loss Exclusion was an intentional choice or, at the very least, the result of deliberate indifference to the effect it would have on its insureds with disabling hearing loss.

118.    This discriminatory decision directly resulted in Kaiser retaining money that it would otherwise would have been required to pay to cover services and equipment for disabled insureds.  Kaiser made this calculus as part of its underwriting, and decided that its desire to retain money outweighed the medically necessary needs of its insureds with disabling hearing loss.

119.    By excluding coverage of all health care related to hearing loss (except for cochlear implants and in 2020 for BAHAs), Kaiser has discriminated, and continues to discriminate against Plaintiffs and the class they seek to represent, on the basis of disability, in violation of Section 1557.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

**COUNT II – BREACH OF CONTRACT AND VIOLATION OF RCW 48.43.0128**

120.    Plaintiffs re-allege all paragraphs above.

121.    All Washington health plan incorporate the relevant requirements of the Insurance Code as additional terms and conditions of the contract, rendering any non-conforming terms void. *See* RCW 48.18.200(2); *Brown v. Snohomish Cty. Physicians Corp.*, 120 Wn.2d 747, 753, 845 P.2d 334, 337 (1993); *accord UNUM Life Ins. v. Ward*, 526 U.S. 358, 376 (1999).

122.    RCW 48.43.0128 forbids Kaiser's health plans from discriminating "in its benefit design or implementation of its benefit design, … against individuals because of their … present or predicted disability, … or other health conditions" or otherwise "discriminate on the basis of …. disability."

123.    RCW 48.43.0128 renders Kaiser's Hearing Loss Exclusion null and void, since the Exclusion is a form of benefit design discrimination targeted at disabled individuals with hearing loss.  Specifically, since the plaintiffs are disabled under Washington law, and Kaiser's health plans are subject to RCW 48.43.0128, the Hearing Loss Exclusion discriminates against Plaintiffs and violates their insurance contract since Plaintiffs' disability is a "substantial factor" in the design and administration of the exclusion of coverage.  *See Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 637, 911 P.2d 1319 (1996).

124.    By excluding coverage of all health care related to hearing loss, (except for cochlear implants and in 2020, BAHAs), Kaiser has discriminated, and continues to discriminate  against Plaintiffs and the class they seek to represent, on the basis of disability, in violation of RCW 48.43.0128.  As Kaiser's contracts must be construed and applied without the Hearing Loss Exclusion pursuant to RCW 48.43.0128 and Washington contract law, Kaiser's use of the Exclusion to deny coverage is also a breach of contract.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

## VIII.   DEMAND FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1.      Certify this case as a class action; designate the named Plaintiffs as class representatives; and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER, Eleanor Hamburger, Richard E. Spoonemore, and John Waldo (of counsel) as class counsel;

2.      Enter judgment on behalf of the Plaintiffs and the class due to Kaiser's discrimination on the basis of disability under both Section 1557 and RCW 48.43.0128;

3.      Declare that Kaiser may not apply the Hearing Loss Exclusion and/or other contract provisions, policies or practices that exclude or impermissibly limit coverage of medically necessary treatment on the basis of disability;

4.      Enjoin Kaiser from applying the Hearing Loss Exclusion and/or other violations of the Affordable Care Act now and in the future;

5.      Enter judgment in favor of Plaintiffs and the class for damages in an amount to be proven at trial due to Kaiser's violation of Section 1557 of the Affordable Care Act and RCW 48.43.0128 of the Washington Insurance Code, and breach of its contracts with Plaintiffs and the class;

6.      Award Plaintiffs and the class their attorney fees and costs under 42 U.S.C. § 1988 and *Olympia S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991); and

7.      Award such other relief as is just and proper.

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 31
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

DATED:  December 15, 2020.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

*s/ Eleanor Hamburger*
Eleanor Hamburger (WSBA #26478)

*s/ Richard E. Spoonemore*
Richard E. Spoonemore (WSBA #21833)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email:   ehamburger@sylaw.com
              rspoonemore@sylaw.com

Of Counsel:

*s/ John F. Waldo*
John F. Waldo, *Pro Hac Vice*
Law Office of John F. Waldo
2108 McDuffie St.
Houston, TX 77019
Tel. (206) 849-5009
Email: johnfwaldo@hotmail.com

*Attorneys for Plaintiffs*

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 32
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Mark A. Bailey**
  mbailey@karrtuttle.com, sanderson@karrtuttle.com,
  mmunhall@karrtuttle.com

- **Eleanor Hamburger**
  ehamburger@sylaw.com, matt@sylaw.com, theresa@sylaw.com,
  stacy@sylaw.com

- **Medora A Marisseau**
  MMarisseau@karrtuttle.com, astanton@karrtuttle.com, jlikit@karrtuttle.com

- **Richard E Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com,
  theresa@sylaw.com, stacy@sylaw.com

- **John F. Waldo**
  johnfwaldo@hotmail.com

DATED:  December 15, 2020, at Seattle, Washington.

_s/ Eleanor Hamburger_
Eleanor Hamburger (WSBA #26478)
Attorneys for Plaintiff

FOURTH AMENDED COMPLAINT (CLASS ACTION) – 33
[Case No. 2:17-cv-01611-RSL]