The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREA SCHMITT; ELIZABETH MOHUNDRO; and O.L. by and through her parents, J.L. and K.L., each on their own behalf, and on behalf of all similarly situated individuals,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN OF WASHINGTON; KAISER FOUNDATION HEALTH PLAN OF WASHINGTON OPTIONS, INC.; KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST; and KAISER FOUNDATION HEALTH PLAN, INC.,

Defendants.

NO.  2:17-cv-01611-RSL

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: VIOLATION OF RCW 48.43.0128 AND BREACH OF CONTRACT

**Note on Motion Calendar: June 23, 2023**

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

# Table of Contents

I.      INTRODUCTION ................................................................................. 1

II.     EVIDENCE RELIED UPON ................................................................ 5

III.    UNDISPUTED FACTS ........................................................................ 5

        A.    Plaintiffs Schmitt and O.L. Are Hearing Disabled and
              Require Hearing Aids to Treat their Disability. ........................... 5

        B.    Plaintiffs Schmitt and O.L. Are Enrolled in Kaiser Health
              Plans Subject to RCW 48.43.0128. ............................................. 6

        C.    But for the Hearing Exclusion, Hearing Aids and Related
              Treatment Would Be Covered When Medically Necessary
              as Durable Medical Equipment and Outpatient
              Treatment. ................................................................................... 7

        D.    History of the Hearing Exclusion at Kaiser ................................ 8

IV.     ARGUMENT ..................................................................................... 10

        A.    Washington State Outlawed Disability Discrimination in
              the Design and Administration of Health Plans. ....................... 10

        B.    Plaintiff Schmitt and O.L. Are Enrolled in Kaiser Non-
              Grandfathered Health Benefit Plans Issued by Health
              Carriers. ..................................................................................... 11

        C.    The Hearing Exclusion Is a Type of "Benefit Design." ........... 12

        D.    Hearing Impairment Is a "Disability" Under Washington
              Law. ........................................................................................... 12

        E.    The Hearing Exclusion Discriminates Because of
              Plaintiffs' Hearing Disability. ................................................... 14

              1.    Legal Standard for Proxy Discrimination. ...................... 15

              2.    Hearing Aids are a Proxy for Hearing Disability. .......... 17

              3.    Overdiscrimination Does Not Immunize Kaiser from
                    Liability for Discrimination. ........................................... 17

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – i
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

4.   Kaiser's Minimal Coverage of CIs and BAHAs Does
     Not Sanction its Discriminatory Hearing Exclusion. .............................19

5.   Kaiser Has a Long History of Excluding Treatment
     for Hearing Loss. ..........................................................................................19

F.   Kaiser's Hearing Exclusion Is Not Based on Reasonable
     Medical Management Techniques. ....................................................................21

     1.   Facially Discriminatory Exclusions May Only Be
          Legitimately Justified Based on Clinical Grounds.................................21

     2.   Kaiser Offers No Clinical Justification for the
          Hearing Exclusion. ......................................................................................23

G.   Kaiser Breaches its Contracts When It Violates
     RCW 48.43.0128..........................................................................................24

V.   CONCLUSION ...........................................................................................................25

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

# Table of Authorities

## CASES

*Bowers v. NCAA,*
563 F. Supp. 2d 508 (D.N.J. 2008) ................................................................. 20

*Brown v. Snohomish Cty. Physicians Corp.,*
120 Wn.2d 747, 845 P.2d 334 (1993) ............................................................ 27

*Cmty. Servs. v. Wind Gap Mun. Auth.,*
421 F.3d 170 (3d Cir. 2005) ............................................................................. 19

*Cole's Wexford Hotel v. Highmark, Inc.,*
2017 U.S. Dist. LEXIS 129181 (W.D. Pa. Aug. 15, 2017) ............................ 23

*Davis v. Guam,*
932 F.3d 822 (9th Cir. 2019) ................................................................... 18, 21

*Doe v. CVS Pharmacy, Inc.,*
982 F.3d 1204 (9th Cir. 2020) ......................................................................... 12

*Fuog v. CVS Pharmacy, Inc.,*
2022 U.S. Dist. LEXIS 84045 (D.R.I. May 10, 2022) .................................... 16

*Glanz v. Vernick,*
750 F. Supp. 39 (D. Mass. 1990) ..................................................................... 25

*Hallauer v. Spectrum Properties, Inc.,*
143 Wn.2d 126, 18 P.3d 540 (2001) ............................................................... 15

*In re Dependency of K.W.,*
199 Wn.2d 131, 504 P.3d 207 (2022) ............................................................. 17

*Lovell v. Chandler,*
303 F.3d 1039 (9th Cir. 2002) ......................................................................... 18

*Mark H. v. Lemahieu,*
513 F.3d 922 (9th Cir. 2008) ........................................................................... 18

*McWright v. Alexander,*
982 F.2d 222 (7th Cir. 1992) ............................................................... 16, 18, 20

*O.S.T. v. Regence BlueShield,*
181 Wn.2d 691, 335 P.3d 416 (2014) ..................................................... 15, 27

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – iii
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

*Pac. Shores Props., LLC v. City of Newport Beach*,
    730 F.3d 1142 (9th Cir. 2013) ................................................................18, 20

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
    965 F.3d 945 (9th Cir. 2020).....................1, 2, 3, 16, 17, 18, 19, 20, 23

*State v. Cook*,
    175 Wn. App. 36, 312 P.3d 653 (2013) ...........................................17

*Sumes v. Andres*,
    938 F. Supp. 9 (1996) ....................................................................25

*Sunderland Servs. v. Pasco*,
    107 Wn. App. 109, 26 P.3d 955 (2001) ..........................................17

*Taylor v. Burlington N. R.R. Holdings, Inc.*,
    193 Wn.2d 611, 444 P.3d 606 (2019).............................................14

*Townsend v. Walla Walla Sch. Dist.*,
    147 Wn. App. 620, 196 P.3d 748 (2008) ...................................13, 14

*Walker v. Wenatchee Valley Truck and Auto Outlet, Inc.*,
    155 Wn. App. 199, 229 P.3d 871 (2010) ........................................15

*Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*,
    173 Wn. App. 174, 293 P.3d 413 (2013) ...................................14, 16

*Woolfolk v. Duncan*,
    872 F. Supp. 1381 (E.D. Pa. 1995) .................................................25

**STATUTES**

42 U.S.C. § 12201 ...................................................................................23

42 U.S.C. § 18011(e) ..............................................................................12

42 U.S.C. § 18116(a) ....................................................................10, 11, 23

RCW 48.18.200(2) ..................................................................................27

RCW 48.30.300 .......................................................................................23

RCW 48.30.300(2) ...............................................................................1, 23

RCW 48.43.005(25) ................................................................................12

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

RCW 48.43.005(30) .................................................................................................. 12

RCW 48.43.0128 .......................................................................................... 2, 11, 23

RCW 48.43.0128(1) ..................................................................................................... 2

RCW 48.43.0128(2) ...................................................................................... 2, 4, 11, 24

RCW 49.60.030(1) ..................................................................................................... 14

RCW 49.60.030(e) ..................................................................................................... 15

RCW 49.60.040(7) .............................................................................................. 13, 14

## REGULATIONS

45 C.F.R. § 156.125 .................................................................................................. 11

45 C.F.R. § 156.125(a) ...................................................................................... 11, 24

45 C.F.R. § 156.125(c) ............................................................................................ 24

WAC 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 .................................................................................................. 11

WAC 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(1) ................................................................................................ 2

WAC 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(3) ...................................................................................... 2, 11, 24

## OTHER AUTHORITIES

81 Fed. Reg. 31376 .................................................................................................. 12

81 Fed. Reg. 31405 .................................................................................................. 24

81 Fed. Reg. 31408 .................................................................................................. 24

81 Fed. Reg. 31409 .................................................................................................. 25

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

# I.  INTRODUCTION

The foundation of the U.S. healthcare system was laid by insurers and employers with a single-minded focus – preserving the employment of the able-bodied. Declaration of Valarie Blake, ¶16. This system was neither devised nor intended to consider the unique medical needs of people with disabilities. *Id.*, ¶15. Consequently, the initial benefits structure was fraught with exclusions and limitations explicitly excluding individuals with disabilities from health coverage and, consequently, the workforce. *Id.*, ¶16. These limitations and exclusions were justified as "fair discrimination," a form of acknowledged discrimination deemed necessary to manage the risk associated with delivering health coverage to an able-bodied workforce. *See e.g.,* RCW 48.30.300(2).

This approach to coverage and benefit design was true for Kaiser Foundation Health Plan of Washington, Kaiser Foundation Health Plan of Washington Options, Inc., Kaiser Foundation Health Plan of the Northwest and Kaiser Foundation Health Plan, Inc. (collectively, "Kaiser"), and its predecessor, Group Health Cooperative ("GHC"). Blake Decl., ¶19. At the time of Kaiser's formation, it was permissible to discriminate based on disability in the design of health benefits for employers and consumers, and Kaiser did so. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 948 (9th Cir. 2020).

During the latter half of the twentieth century, regulation on health insurance became more stringent and numerous federal and state disability anti-discrimination laws were enacted. Despite this, the notion of health insurers freely engaging in "fair discrimination" prevailed. Blake Decl., ¶¶20-27. This entrenched ideology became a "major barrier to equality for people with disabilities." *Id.*, ¶28.

The Affordable Care Act ("ACA"), and state-level legislation such as RCW 48.43.0128, transformed health insurance practices. These laws eradicated the

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 1
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

concept of "fair discrimination" within ACA-regulated health plans. *See* RCW 48.43.0128.
Both laws prohibited virtually all medical underwriting and outlawed benefit designs
that allowed insurers and employers to evade addressing the healthcare needs of people
with disabilities. As the Ninth Circuit noted in *Schmitt*, health insurers are now obligated
to "consider the needs of disabled people and not design plan benefits in ways that
discriminate against them." *Schmitt*, 965 F.3d at 955.

In 2019, Washington State enacted an unambiguous ban on fair discrimination in
certain health insurance. With RCW 48.43.0128, Washington State explicitly outlawed
disability discrimination in the design and administration of non-grandfathered health
plans issued by Washington health carriers.  The new statute, effective as of April 17,
2019, reads in relevant part as follows:

> (1) A health carrier offering a nongrandfathered health plan….may
> not…[i]n its benefit design or implementation of its benefit
> design, discriminate against individuals because of their …
> present or predicted disability…or other health conditions.

> (2) Nothing in this section may be construed to prevent a carrier
> from appropriately utilizing reasonable medical management
> techniques.

RCW 48.43.0128(1), (2); Declaration of Eleanor Hamburger Decl., *Exh. I.[1]   See also,*
WAC 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(1)(a), (3) (defining "reasonable medical management techniques").
With the passage of this statute, Kaiser was required to reconsider the exclusions and
limitations in its health plans, including the exclusion of treatment related to hearing
loss, which is central to this case.  Exclusions that were formerly permitted as "fair
discrimination" could only remain if they were based on "reasonable medical
management techniques."  Kaiser, however, did not engage in any such reconsideration.

---

[1] Unless otherwise indicated, all exhibits cited in this brief are to the Declaration of Eleanor
Hamburger.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 2
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

The Hearing Exclusion is one such exclusion that was once permitted and is now prohibited as discriminatory.  As far as Kaiser can tell, it has always included in the standard "base benefit" plan an exclusion of coverage for all treatment related to hearing loss ("Hearing Exclusion" or "Exclusion").  *Exh. B*, pp. 62:14-64:13.  The base benefit plan was modified in 2013 to include coverage of cochlear implants ("CIs"), and again in 2019 to cover bone-anchored hearing aids ("BAHAs") and diagnostic hearing evaluations. *Exh. R*, p. KAISER_3951; *Exh. B*, pp. 72:2-77:1; *Exh. C*.  Kaiser, however, persisted in excluding all other hearing treatment, particularly targeting coverage of prescription hearing aids and associated treatments.

Kaiser's design and administration of the Hearing Exclusion violates RCW 48.43.0128 and breaches the Kaiser contracts under which Plaintiffs Schmitt and O.L. receive their health coverage:

**First,** the Exclusion is discrimination on the basis of present or predicted disability and/or other health condition in violation of RCW 48.43.0128(1).  Hearing aids are a proxy for disabling hearing impairment. *See Schmitt,* 965 F.3d at 958.  When insureds with hearing impairments need medical devices to treat their hearing loss, the overwhelming majority require treatment with hearing aids.  Lin Decl., *Exh. A,* p. 2.  Only a tiny fraction of hearing disabled insureds can have their needs met with CIs and BAHAs, both of which are invasive surgical procedures. *Id.*  Kaiser violates state anti-discrimination law when it designs and administers an Exclusion of the essential medical device required by the vast majority of hearing disabled insureds who seek treatment for their hearing loss.

**Second,** the discriminatory Exclusion is not based upon "reasonable medical management techniques."  RCW 48.43.0128(2).  Kaiser's justifications for the Exclusion, identified during discovery, lack any clinical grounds whatsoever. *Exh. B*, pp. 34:3-51:24;

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 3
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

*Exh. O*, pp. 3-5, 7. Kaiser, in fact, concedes that prescription hearing aids are not experimental but rather they are the conventional medical treatment for hearing impairment. *Exh. B*, pp. 36:24-37:2; 38:16-39:2; *see Exh. G*, p. 49:4-11; *Exh. S*, p. KAISER_3892. In short, Kaiser has no clinical basis to justify its discrimination. Without a clinical justification that satisfies RCW 48.43.0128(2), the Exclusion is illegal discrimination.

**Third,** Kaiser's violation of RCW 48.43.0128 is also a breach of contract. As this Court previously concluded, RCW 48.43.0128 enters into each Kaiser contract and excises all non-conforming contract terms. *See* Dkt. No. 81, pp. 2-3. If the Court determines that the Hearing Exclusion violates RCW 48.43.0128, it should also find that Kaiser breached its contracts with Plaintiffs Schmitt and O.L. since April 17, 2019, by incorporating the Exclusion into their plans, and in the case of Plaintiff O.L., applying the Exclusion to deny coverage of her hearing aids.

This Motion for Partial Summary Judgment seeks a judicial determination regarding whether Kaiser violated RCW 48.43.0128 and breached its contracts with Plaintiffs Schmitt and O.L. since April 17, 2019 (when the law took effect) by designing and administering the Hearing Exclusion. Plaintiffs intend to file a second Motion for Partial Summary Judgment seeking relief under the Affordable Care Act's Section 1557 on behalf of all Plaintiffs and the proposed class, after the Court determines class certification. If the instant Motion is successful, Plaintiffs will also move to have the Court's decision on partial summary judgment as to Plaintiffs O.L. and Schmitt apply to all class members who were enrolled on or after April 17, 2019 in Kaiser non-grandfathered health plans.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 4
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

## II.   EVIDENCE RELIED UPON

Plaintiffs rely upon the Declarations of Eleanor Hamburger, Frank Lin, M.D., J.L., Professor Valarie Blake, and all exhibits attached to the declarations as well as the pleadings and filings in the record.

## III.   UNDISPUTED FACTS

**A.      Plaintiffs Schmitt and O.L. Are Hearing Disabled and Require Hearing Aids to Treat their Disability.[2]**

Plaintiffs Schmitt, and O.L. have been diagnosed with hearing impairment for which they require treatment with hearing aids:

*First,* each is diagnosed with an objectively determined hearing impairment. *Exhs. D, E.* Plaintiffs' expert, Frank Lin, M.D., confirms it.  Lin Decl., *Exh. A,* p. 16.

*Second,* each had a licensed hearing care provider recommend the use of a prescription hearing aid to treat their hearing impairment.  *See Exhs. D, E.*

*Third,* each plaintiff actually uses prescription hearing aids to address their hearing impairment.  *Id.; see also* Lin Decl., *Exh. A,* p. 15.

Additionally, neither Plaintiff can be treated with a CI or BAHA, which are covered under their Kaiser plans.  *Id.*  As Dr. Lin explains, treatment with a CI or BAHA is only available if treatment with hearing aids is not effective. *Id.,* p. 11.   Since prescription hearing aids are effective for Plaintiffs Schmitt and O.L., they are ineligible for treatment with CIs and BAHAs.  *Id.,* pp. 11, 15.  The only medical device that can effectively treat their hearing impairment are hearing aids.  *Id.*  And, presently, no over-the-counter ("OTC") device has been recommended by Plaintiffs Schmitt and O.L.'s audiologists to meet their hearing care needs.  Lin Decl., *Exh. A,* p. 12.  *See Exh. F,*

---

[2] Plaintiff Mohundro is also hearing disabled but has not been enrolled in a Kaiser Washington insured plan since April 17, 2019.  Accordingly, the relief sought by this Motion does not apply to Plaintiff Mohundro.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 5
[Case No. 2:17-cv-01611-RSL]

pp. 72:5-73:17; J.L Decl., ¶3. In sum, Plaintiffs Schmitt and O.L. require prescription hearing aids and related treatment for their hearing impairments.

**B.    Plaintiffs Schmitt and O.L. Are Enrolled in Kaiser Health Plans Subject to RCW 48.43.0128.**

Plaintiffs Schmitt and O.L. are enrolled in Washington non-grandfathered insured health plan issued by Kaiser Foundation Health Plan of Washington or Kaiser Foundation Health Plan of Washington Options. Dkt. No. 65, ¶97; Dkt. No. 87, ¶97.

Plaintiffs' Kaiser non-grandfathered plans are governed by Washington law and promise to abide by all state law requirements.  *See e.g., Exh. A,* pp. 2-3.

Each Kaiser plan excludes hearing aids and hearing aid treatment in the health plan.  *See e.g., id.,* pp. 23-24.  Specifically, O.L.'s 2020 plan states:

| Hearing Examinations and Hearing Aids | Preferred Provider Network | Out of Network |
|---|---|---|
| Hearing exams for hearing loss and evaluation are covered.<br><br>Cochlear implants or Bone Anchor Hearing Aids (BAHA) when in accordance with KFHPWAO clinical criteria.<br><br>Covered services for cochlear implants and BAHA include diagnostic testing, pre-implant testing, implant surgery, post implant follow-up, speech therapy, programming and associated supplies (such as transmitter cable and batteries). | **Hospital – Inpatient:** After Deductible, Member pays 20% Plan Coinsurance<br><br>**Hospital – Outpatient:** After Deductible, Member pays 20% of Plan Coinsurance<br><br>**Outpatient Services:** Office visits: Member pays $35 Copayment<br><br>Enhanced Benefit: Member pays $25 Copayment<br><br>Annual Deductible and Plan Coinsurance | **Hospital – Inpatient:** After Deductible, Member pays 40% Plan Coinsurance<br><br>**Hospital – Outpatient:** After Deductible, Member pays 40% of Plan Coinsurance<br><br>**Outpatient Services:** Office visits: Member pays 40% Plan Coinsurance |

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 6
[Case No. 2:17-cv-01611-RSL]

| | do not apply to office visits but do apply to all other services including outpatient surgery | |
|---|---|---|
| Hearing aids including hearing aid examinations | Not covered; Member pays 100% of all charges | Not covered; Member pays 100% of all charges |
| **Exclusions**: Programs or treatments for hearing loss or hearing care including but not limited to, externally worn hearing [aids] or surgically implanted hearing aids, and the surgery and services necessary to implant them except as described above; hearing screening tests required under Preventive Services | | |

*Id.,* pp. 23-24, *see also Exh. C.*

Since 2013, each Kaiser plan excluded all treatment related to hearing loss, apart from CIs. *See e.g.,* Dkt. No. 18, p. 29 of 66; Hamburger Decl., *Exh. R,* p. KAISER_3951. Starting in 2019, the Exclusion changed to expressly cover BAHAs and diagnostic hearing examinations, while continuing to exclude all coverage for hearing aids and related hearing aid examinations. *See Exh. A,* pp. 23-24; *Exh. B,* pp. 72:2-77:1; *Exh. C.* Kaiser administers the Exclusion even though prescription hearing aids are medical devices that can be clinically effective for treating hearing impairments. *Id., Exh. B,* pp. 36:12-37:2; 38:16-39:2; 39:15-20; 97:2-14: Lin Decl., *Exh. A,* p. 10.

**C.    But for the Hearing Exclusion, Hearing Aids and Related Treatment Would Be Covered When Medically Necessary as Durable Medical Equipment and Outpatient Treatment.**

Kaiser's health plans cover medically necessary Durable Medical Equipment and Outpatient Treatment. *See e.g.,* Dkt. No. 18-1, p. 22 out of 66 ("Durable medical equipment: Equipment which can withstand repeated use, is primarily and customarily used to serve a medical purpose, is useful only in the presence of an illness or injury and is used in the member's home."); p. 40 out of 66 ("Covered outpatient medical and surgical services in a provider's office, including chronic disease management."); Hamburger Decl., *Exh. A,* pp. 17, 36 (same).  Prescription hearing aids meet those criteria.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

There is no dispute that O.L. and Schmitt's hearing aids meet Kaiser's medical necessity standards.

*First,* when Kaiser covers hearing aids (in special riders sold only to large group employers), it automatically assumes that all claims are medically necessary and engages in no clinical review at all.  *See Exh. B,* pp. 42:15-24.  Thus, under Kaiser's existing practice, Schmitt and O.L.'s hearing aids purchased after April 17, 2019 would be covered as medically necessary Durable Medical Equipment but for the application of the Exclusion.

*Second,* Kaiser *covered* O.L.'s previous hearing aids as medically necessary in 2016 when a claim was submitted by Seattle Children's Hospital, despite the Exclusion. *See* Dkt. No. 105, ¶5, Dkt. No. 105-2 (Kaiser covered hearing aids submitted through facilities like Seattle Children's Hospital through 2019).  O.L.'s condition has remained stable since then, and her need for hearing aids continues to be essentially the same.  *See e.g.,* Hamburger Decl., *Exh. E.* Plaintiff O.L.'s hearing treatment in 2019 and 2020 was denied by Kaiser under the Exclusion despite being medically necessary.  *See e.g., Exh. U.*

**D.      History of the Hearing Exclusion at Kaiser**

The origin of the Hearing Exclusion at Kaiser is obscure.  As its Rule 30(b)(6) witness testified, Kaiser does not know when the Exclusion was created.  *Exh. B,* pp. 62:14-63:16 (Kaiser's witness could only say "its not a new exclusion.").  Kaiser had no evidence that hearing aids had *ever* been covered in its base benefit plans.  *Id.,* p. 63:17-22.  As far as Kaiser could tell, the Exclusion had just always been in place.  *Id.,* pp. 63:23-64:13.

Clinical criteria for  coverage of CIs were found by Kaiser starting in 1995.  *Id.,* p. 64:14-22. According to Kaiser, clinical review criteria "are developed to assist in administering plan benefits" and "are technical and written to assist medical personnel

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 8
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

in making coverage determinations." *Exh. L.*  Clinical criteria for covering BAHAs were developed around 2005.  *Exh. B*, pp. 64:23-24; 71:2-5.  However, no clinical criteria for prescription hearing aids exist at Kaiser. *See id.*, p. 30:4-8; *Exh. G*, p. 48:16-19.  The absence of such a review is not a function of the Kaiser benefit structure.  After all, Kaiser/GHC had clinical criteria for the medical necessity of CIs and BAHAs established long before they added coverage of CIs and BAHAs into the base plan language (in 2013 for CIs and 2019 for BAHAs).  *See Exh. B*, pp. 72:8-77:1; *Exh. R*, p. KAISER_3951.

Kaiser has produced no evidence of any medical or clinical analysis to justify its decision to exclude prescription hearing aids.  Hamburger Decl. ¶2; *Exh. B*, p. 30:9-13. Neither the Medical Policy Committee (which develops clinical criteria), nor the Medical Technology Assessment Committee (which reviews uses of new and existing technology) have reviewed prescription hearing aids.  *Id.*, ¶2, *Exh. B*, pp. 32:2-33:17; *Exh. H; T*.  Although Kaiser maintains these and other committees to evaluate and establish clinical criteria for coverage, medical necessity and efficacy for existing and emerging technologies, none of these committees have concluded that prescription hearing aids are experimental or investigational.  *See id.*  Indeed, prescription hearing aids (also known as air-conduction hearing aids) are considered by the Medical Technology Assessment Committee to be the "conventional treatment option" for hearing loss.  *See e.g., Exh. S*, p. KAISER_3892.  Kaiser's Rule 30(b)(6) witness and chief audiologist both conceded that hearing aids (1) are not experimental and investigational and (2) are effective at treating hearing impairments.  *See Exh. B*, pp. 36:24-37:2; 38:16-39:2; *Exh. G*, p. 49:4-11.  Moreover, Kaiser covers hearing aids as medically necessary when a rider is purchased.  *Exh. B*, pp. 38:22-39:2. In sum, Kaiser has no clinical or medical justification for excluding prescription hearing aids from coverage.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 9
[Case No. 2:17-cv-01611-RSL]

Nonetheless, Kaiser continues to exclude hearing aids from its base benefit plan. *Exh. B*, pp. 37:3-11, 68:17-70:5.  It only offers coverage of prescription hearing aids as a special rider (for an additional premium payment) for the large group employers that request it.  *Id.*  No rider is available in the small group or individual markets.  *Id.*  Kaiser enrollees cannot purchase hearing aid riders on their own. *Id.*  And importantly, Kaiser – not any employer – designs the base benefit plan, offers the riders and makes the decision as to how coverage will be made available for sale to employers and consumers. *See id.*, p. 119:14-20.

## IV.  ARGUMENT

**A.    Washington State Outlawed Disability Discrimination in the Design and Administration of Health Plans.**

In 2019, the Washington Legislature passed RCW 48.43.0128 to ensure that consumer protections that were at least as strong as those contained in the Affordable Care Act would remain in place, if the ACA were dismantled. *See Exh. I*, preamble ("A[n act] relating to making state law consistent with selected federal consumer protections in the patient protection and affordable care act").  In some instances, the Legislature went even further to protect consumers.  RCW 48.43.0128 is one example.  With the passage of RCW 48.43.0128, the Legislature enacted a state anti-discrimination statute that was more protective than the ACA's anti-discrimination law, known as Section 1557. *See* 42 U.S.C. § 18116(a).  Specifically, RCW 48.43.0128 is not limited to the grounds of or enforcement mechanisms of Section 504 of the Rehabilitation Act, but is far broader, merging both Washington's expansive definition of disability with the protective anti-discrimination regulation pertaining to Essential Health Benefits ("EHBs") developed by HHS.  *Compare* RCW 48.43.0128 with 42 U.S.C. § 18116(a) and 45 C.F.R. § 156.125.

RCW 48.43.0128 states in relevant part: "A health carrier offering a non-grandfathered health plan … may not…in its benefit design or implementation of its

benefit design, discriminate against individuals because of their … present or predicted disability, … or other health conditions." *See also* WAC 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.   To prove discrimination under Washington law, Plaintiffs need only demonstrate: [1] Kaiser is a health carrier that offered non-grandfathered health benefit plans [2] that in its benefit design or implementation of the benefit design [3] discriminated because of present or predicted disability or other health condition.

RCW 48.43.0128 also sharply limits the grounds on which an insurer may claim that its justifications for a discriminatory benefit design are permitted.  Specifically, like 45 C.F.R. § 156.125, RCW 48.43.0128 only permits discriminatory treatment when it is based on "reasonable medical management techniques."  RCW 48.43.0128(2).  In other words, such justifications must be "*clinically based*."   45 C.F.R. § 156.125(a). Washington's rules are functionally identical.  WAC 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(3) (2020) ("Appropriate use of medical management techniques includes use of evidence-based criteria for determining whether a service or benefit is medically necessary and clinically appropriate").   Under RCW 48.43.0128, a discriminatory exclusion can only be legitimately justified based upon clinically appropriate, evidence-based criteria for determining medical necessity.

**B.**   **Plaintiff Schmitt and O.L. Are Enrolled in Kaiser Non-Grandfathered Health Benefit Plans Issued by Health Carriers.**

Kaiser is a Washington health carrier. Dkt. No. 65, ¶9, Dkt. No. 87, ¶9.  Kaiser Foundation Health Plan of Washington has a certificate of authority as a health maintenance organization.  *Exh. J.*  Kaiser Foundation Health Plan of Washington Options has a certificate of authority as a health care service contractor.  *Exh. K.*  By law, these entities are "health carriers."  RCW 48.43.005(30).  The term "grandfathered health plan" refers to a specific provision of the ACA that permits the continuation of coverage under a group health plan or health insurance coverage in existence on March 23, 2010.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

*See* RCW 48.43.005(25), referencing 42 U.S.C. § 18011(e).  That carve out does not apply here as Kaiser concedes that the plans of Plaintiffs Schmitt and O.L. are "non-grandfathered."  Dkt. No. 65, ¶97; Dkt. No. 87, ¶97.

**C.      The Hearing Exclusion Is a Type of "Benefit Design."**

Although RCW 48.43.0128 does not define "benefit design," federal guidance on the ACA's Section 1557 does:

> Benefit design, though intentionally undefined, "includ[es] covered benefits, benefits limitations or restrictions, and cost-sharing mechanisms, such as coinsurance, copayments, and deductibles"

*Id.*, at 955, citing 81 Fed. Reg. 31376 (emphasis added). Kaiser's hearing exclusion is a form of benefit design. *See id.; see also, Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020) (requirement that enrollees obtain HIV medications through mail-order pharmacies is a benefit design).

Kaiser's Hearing Exclusion eliminates all coverage of hearing aids and related treatment.  As shown below, only people with hearing disabilities use hearing aids.  Lin Decl., *Exh. A*, p. 2.  Indeed, it is the predominant medical device recommended and prescribed for people diagnosed with hearing impairments.  *Id.*

**D.      Hearing Impairment Is a "Disability" Under Washington Law.**

Washington law is, by design, broader than federal law when defining what constitutes a disability.[3]  A "disability" includes the presence of any "sensory, mental or physical impairment" that is medically cognizable or diagnosable.  RCW 49.60.040(7)(a). The term "impairment" means any physiological disorder or any condition affecting various body systems, including the special sense organs and the nervous (neurological)

---

[3]  In 2006 the Washington State Supreme Court defined "disability" by reference to the standards under the federal Americans with Disability Act of 1990.  "The legislature then amended RCW 49.60.040 to include a substantially broader definition of 'disability.'" *Townsend v. Walla Walla Sch. Dist.*, 147 Wn. App. 620, 625, 196 P.3d 748, 751 (2008).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

system.   RCW 49.60.040(7)(c)(i).   As Dr. Lin confirms, hearing loss is a cognizable, diagnosable sensory condition.   Lin Decl., *Exh. A*, pp. 2-4.   So does Dr. Susan Porter, Kaiser's long-standing audiologist.   *See e.g., Exh. G*, p. 29:4-7 (Porter only prescribes hearing aids after an objective study confirming hearing loss).   Hearing impairment is also a condition of the nervous system, in that the nerves or brain involved with the translation, transmission, or reception of neural impulses representing sound are either themselves impaired or transmit and received impaired neural impulses. Lin Decl., *Exh. A*, p. 3. Consistent with Washington law, persons who are diagnosed with hearing impairment are "disabled."[4] *See* RCW 49.60.040(7); *Townsend*, 147 Wn. App. at 626; *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*, 173 Wn. App. 174, 187-89, 293 P.3d 413 (2013) ("[T]hose that are hard of hearing are disabled ….").

This broad definition of "disability" is incorporated into RCW 48.43.0128. Kaiser concedes as much.   *See* Dkt. No. 102, pp. 6-7 (agreeing that the term "disability" in RCW 48.43.0128 is defined by RCW 49.60.040(7)(a)).   This is also clear given the statutory framework: (1) RCW 48.43.0128 prohibits a discriminatory benefit design in non-grandfathered health plans; (2) RCW 49.60.040(7) defines "disability" for purposes of the Washington Law Against Discrimination ("WLAD"); and (3) RCW 49.60.030(1)(e) of the WLAD prohibits discrimination in insurance transactions generally, except those specifically allowed by certain statutes not relevant here.   RCW 49.60.030(1) ("The right to be free from discrimination because of … the presence of any sensory, mental, or physical disability … is recognized and declared to be a civil right.   This right shall

---

[4] All people with diagnosed hearing impairments are "disabled" as a group.  Put simply, diagnosed hearing loss is an "impairment" under Washington law.  As a result, any diagnosed condition of hearing loss, whether mild to severe, meets the definition of disability under the WLAD and RCW 48.43.0128. *See Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d 611, 617, 444 P.3d 606 (2019) (a diagnosis of "obesity," regardless of the level of obesity, meets the WLAD definition).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 13
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

include … (e) the right to engage in insurance transactions or transactions with health maintenance organization without discrimination ….”). In other words, RCW 48.43.0128 furnishes Washington persons with disabilities protection from illegal benefit design discrimination in a particular type of insurance known as non-grandfathered health plans, consistent with RCW 49.60.030(1)(e).

Even if the court were to conclude that there is some ambiguity as to whether RCW 48.43.0128 adopts the definition of “disability” from the WLAD – and it should not – the rules of statutory construction require it.  Since the two statutes govern the same subject matter (discrimination in health insurance), they must be read together “as constituting a unified whole … which maintains the integrity of the respective statutes.” *Hallauer v. Spectrum Properties, Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001). Thus, “effect will be given to both to the extent possible” and “efforts will be made to harmonize statutes.” *Walker v. Wenatchee Valley Truck and Auto Outlet, Inc.*, 155 Wn. App. 199, 208, 229 P.3d 871 (2010).  This approach is consistent with both statutory schemes. *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 702, 335 P.3d 416 (2014).

In sum, Plaintiffs Schmitt and O.L. were both diagnosed with some form of hearing impairment.  Lin Decl., *Exh. A*, p. 16; *Exhs. D-E*.  As a matter of fact and law, Plaintiffs Schmitt and O.L. are disabled due to their hearing impairments under Washington law.

**E.     The Hearing Exclusion Discriminates Because of Plaintiffs’ Hearing Disability.**

Under Washington law, the right to be free from disability discrimination extends to insurance transactions (including transactions with HMOs).  RCW 49.60.030(e).  A “defendant discriminate[s] against the plaintiff by providing treatment not comparable to the level of services provided to individuals without disabilities.” *Wash. State Commc'n Access Project*, 173 Wn. App. at 187 (discrimination in public accommodation).

PLAINTIFFS’ MOTION FOR PARTIAL SUMMARY JUDGMENT – 14
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

Here, Kaiser offers coverage of medically necessary durable medical equipment ("DME") and related outpatient treatment to insureds who are not hearing disabled. *See Exh. A*, pp. 17, 36. At the same time, the overwhelming majority of insureds with hearing disabilities who need treatment for their hearing impairment cannot get it covered, due solely to the Exclusion. *See* Lin Decl., *Exh. A*, pp. 2, 10-11. Thus, the predominant treatment required by persons with hearing disabilities – as a group – is not covered due to the Exclusion. *Schmitt*, 965 F.3d at 949. As a group, their predominant need for treatment is not met. That is discrimination in benefit design.

### 1. Legal Standard for Proxy Discrimination.

Hearing aids are a proxy for hearing impairment, in much the same way that gray hair is for old age or wheelchairs are for mobility impairments. *See e.g., Fuog v. CVS Pharmacy, Inc.*, 2022 U.S. Dist. LEXIS 84045, at *14 (D.R.I. May 10, 2022) (a proxy is "not a perfect correlation with disability, but close enough so that discrimination on the basis of the proxy is essentially discrimination on the basis of disability"); *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) ("no doubt a policy excluding wheelchairs would be such discrimination," discrimination because of a "handicap" [*sic.*]). As the Ninth Circuit concluded in *Schmitt,* proxy discrimination arises from a standard policy, such as an exclusion, that "treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with" a disability that the different treatment "is, constructively, facial discrimination against the disfavored group." *Id.*, 965 F.3d at 958. As it concluded, "a categorical exclusion of treatment for hearing loss would raise an inference of discrimination against hearing disabled people notwithstanding that it would also adversely affect individuals with non-disabling hearing loss." *Id.* at 949. Here, the Exclusion is not categorical, since it covers some treatment for CIs (and now BAHAs). *See id.* As a result, the Court must consider

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

whether the Exclusion is a proxy for hearing disability such that the limited coverage offered by Kaiser fails to "adequately serve the needs of hearing disabled people as a group." *Id.*

Washington courts recognize proxy discrimination and hold that it is illegal. *See e.g., In re Dependency of K.W.,* 199 Wn.2d 131, 155, 504 P.3d 207 (2022) ("[I]t is impermissible for the Department or dependency courts to rely on factors that serve as proxies for race …."); *State v. Cook,* 175 Wn. App. 36, 44, 312 P.3d 653 (2013) (A race neutral reason can be a "proxy" for race discrimination if it results in removal of 50% of members of a protected racial group); *Sunderland Servs. v. Pasco,* 107 Wn. App. 109, 123, 26 P.3d 955 (2001) (ordinance that imposed different treatment on living arrangements defined as "group care facilities" was a form of proxy discrimination based on disability and familial status). Proxy discrimination is an appropriate way to determine discrimination in health benefit design under RCW 48.43.0128. Without this analytical approach, health plans could simply rewrite their exclusions from being disability-based to being based on the specific treatment or device most required by those with the disability, just to evade compliance. The court must consider proxy discrimination since "discrimination 'because of' handicap is frequently directed at an effect or manifestation of a handicap rather than being literally aimed at the handicap itself." *McWright*, 982 F.2d at 228.

Plaintiffs need not prove that Kaiser harbored overt prejudice or animus towards hearing disabled insureds in order to prevail on their proxy discrimination claims. "Proxy discrimination is a form of facial discrimination." *Davis v. Guam,* 932 F.3d 822, 837 (9th Cir. 2019), *quoting Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). And facial discrimination, even when occurring in the form of a proxy, does not require proof of animus when no monetary damages are sought.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 16
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

*Schmitt,* 965 F.3d at 954 n.6 (*quoting Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008)). "[B]y its very terms, facial discrimination is 'intentional.'"  *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002).  Indeed, the Ninth Circuit has already concluded that Kaiser's design of the Hearing Exclusion "inherently involves intentional conduct."  *Schmitt,* 965 F.3d at 954.

### 2.    Hearing Aids are a Proxy for Hearing Disability.

Hearing aids are a proxy for hearing impairment because they are so closely associated with hearing disability.  Hearing aids are prescribed when there is an objective diagnosis of hearing impairment. Lin Decl., *Exh. A*, pp. 2, 10 (Licensed hearing care professionals rarely prescribe or recommend hearing aids without a diagnosis of hearing impairment); *see Exh. G,* pp. 28:23-29:7 (same).  Hearing aids are rarely – if ever – used to treat any condition other than hearing impairments.  Lin Decl., *Exh. A*, p. 10; *See Exh. G*, pp. 56:24-58:11.  In sum, only hearing disabled individuals – people with diagnosed hearing impairment – use hearing aids.  Hearing aid use correlates so closely with disabling hearing impairment (as defined under Washington law) to be a proxy for it.  *See Schmitt,* 965 F.3d at 958.[5]  Just like "a classification based on 'service dogs' could, in many contexts, constitute a proxy for discrimination 'because of' a handicap" so is a classification related to hearing aids constitute a proxy for hearing disability here. *Cmty. Servs. v. Wind Gap Mun. Auth.,* 421 F.3d 170, 179 (3d Cir. 2005).

### 3.    Overdiscrimination Does Not Immunize Kaiser from Liability for Discrimination.

Kaiser suggests that because that many people with hearing impairments do not use hearing aids at all, the "fit" between hearing aids and hearing disability is not precise

---

[5] Any actual overdiscrimination does not allow Kaiser to avoid liability: "That the hearing loss exclusion also affects some non-disabled individuals does not doom Schmitt and Mohundro's claim per se, since overdiscrimination is prohibited." *Schmitt,* 965 F.3d at 958.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

enough to be a proxy.[6]  *See* Dkt. No. 72, pp. 8-13.  But as the Ninth Circuit explained, the fact that some people with hearing disabilities do not use or seek hearing aids, and therefore are unaffected by the Hearing Exclusion, is wholly irrelevant.  (If it was relevant, then a landlord could defend against a proxy racial discrimination claim by simply arguing that there are many racial minorities who do not want to rent the landlord's apartment.)  Rather, the relevant question when considering the fit is the ***effect*** the proxy has on ***those actually seeking the service***.  Or, as applied here, that is "whether the exclusion primarily affects disabled persons."  *Schmitt,* 965 F.3d at 959; *Pac. Shores Props., LLC,* 730 F.3d at 1160 n.23 ("In a case of proxy discrimination the defendant discriminates against individuals on the basis of criteria that are almost exclusively indicators of membership in the disfavored group"); *Bowers v. NCAA,* 563 F. Supp. 2d 508, 519 (D.N.J. 2008) ("special education" was a proxy for "disability" because special education services are provided for the needs of students with disabilities, even though some disabled students might not need or choose not to use special education services).

Here, ***only*** hearing disabled people use hearing aids, such that Kaiser's Hearing Exclusion impacts ***only*** hearing disabled insureds. *Schmitt,* 965 F.3d at 959.  An exclusion of hearing aids, the predominant medical device used by people with hearing disabilities as a group, is a form of proxy discrimination.  *See id.,* at 949.  Hearing aids, like wheelchairs and seeing-eye dogs, are the "manifestation" of a disability.  *McWright,* 982 F.3d at 228.  The fit between hearing aids and hearing disability is more than sufficiently close for proxy discrimination.

---

[6] Of course, it could also have something to do with the fact that people do not seek hearing aids due to the stigma and prejudice experienced by people who use hearing aids, as well as the uncovered expenses associated with discriminatory exclusions. Lin Decl., *Exh. A,* p. 13.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

### 4. Kaiser's Minimal Coverage of CIs and BAHAs Does Not Sanction its Discriminatory Hearing Exclusion.

Kaiser also suggests that the Hearing Exclusion is "underinclusive" because Kaiser provides coverage for two types of hearing devices – CIs and BAHAs.  *See* Dkt. No. 72, p. 18.   Any such "under-inclusiveness" does not impact the illegal and discriminatory nature of the Exclusion.   Those interventions are used by only a tiny portion of hearing disabled insureds, roughly under 5%.   Lin Decl., *Exh. A*, p. 2. Moreover, CIs and BAHAs, both requiring invasive surgeries, are only available if treatment with (non-covered) hearing aids is ineffective. *Id.*, pp. 10-11; *Exh. G*, pp. 54:17-55:19; *Exh. N*, p. KAISER_1946 (CIs "are covered as a prosthetic when hearing aids are medically inappropriate or cannot be used…").   Indeed, people using CIs turn to that treatment generally only after hearing aids fail to meet their needs.   Lin Decl., *Exh. A*, p. 11 ("[A] cochlear implant would never be indicated or considered for a patient whose hearing and communication needs are being sufficient met using a hearing aid or other non-invasive approaches.").   This narrow carve-out does not relieve Kaiser from liability for its discriminatory exclusion of hearing aids and related services for people with hearing disabilities.

### 5. Kaiser Has a Long History of Excluding Treatment for Hearing Loss.

Ultimately, the proxy analysis considers whether, in light of the history, circumstance, and actual application of the policy, the proxy is closely aligned with a protected class.  *See Davis*, 932 F.3d at 838.  The history of the Hearing Exclusion shows it is closely related to the historic exclusion of people with hearing disabilities from accessing coverage for their condition, just like other individuals with disabilities.

Kaiser and its predecessor GHC historically excluded ***all*** treatment related to hearing loss.  The mid-1990s was the first time that GHC had a clinical coverage policy for ***any*** treatment related to hearing loss, when it established one for CIs. *Exh. B*, p. 64:14-

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

22.  GHC developed a clinical policy for BAHAs around 2005.  *Id.*, p. 64:23-24.  But up until 2013, GHC did not even include coverage of CIs in its base benefit plan.  *Id., Exh. R*, p. KAISER_3951.  Kaiser did not include coverage of BAHAs in its base benefit plan until 2019.  *Id., Exh. C, Exh. B*, pp. 72:2-77:1.

In sum, throughout its history, first GHC and then Kaiser excluded all coverage related to hearing loss in its standard "base benefit" plan.  Gradually in 2013 and 2019, the base benefit plan was modified to add coverage of CIs, BAHAs and diagnostic hearing examinations, but the historic exclusion of all other coverage for hearing loss remains.  Kaiser maintained this exclusion, now chiefly of prescription hearing aids, without any clinical analysis of the medical necessity and efficacy of prescription hearing aids.  *See Exh. B*, p. 30:4-8; *Exh. G*, p. 48:16-19, *Exh. H.*  Kaiser has not produced any medical or clinical analysis to justify the Exclusion.  Hamburger Decl., ¶2.

Kaiser's ongoing Hearing Exclusion perfectly reflects the historic discrimination experienced by people with disabilities when they sought health insurance coverage.  As Professor Blake notes, insurers like Kaiser and GHC were formed to meet the health care needs of able-bodied workers.  *See* Blake Decl., ¶¶9-19.  By design, these plans were structured to exclude the needs of people with disabilities, so that the insurers could avoid what was perceived to be higher-cost and higher-risk enrollees (whether that perception was true or not).  *Id.*  This historic benefit design also served to discourage people with disabilities from entering the workforce.  *See id.*, ¶14.  Services that were typically relied upon by disabled insureds were intentionally excluded.  *Id.*, ¶16.  Durable medical equipment was historically excluded since wheelchairs, crutches, walkers, and in this case, hearing aids, were predominantly used by people with disabilities.  *See id.*  In sum, before the ACA and RCW 48.43.0128, insurers ***legally*** designed health plans in order to avoid enrolling people with disabilities and other

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 20
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

health conditions (even including pregnancy).  *Id.,* ¶15; *Schmitt,* 965 F.3d at 948.  No longer.  The ACA and RCW 48.43.0128 were specifically designed to eliminate "fair" discrimination for certain highly-regulated health plans known as "non-grandfathered" health plans.  Consequently, insurers, including Kaiser, are compelled to align their benefit design and administration with these new anti-discrimination requirements.  This is a transformative shift in how insurers do business in the health coverage marketplace.

**F.    Kaiser's Hearing Exclusion Is Not Based on Reasonable Medical Management Techniques.**

    **1.    Facially Discriminatory Exclusions May Only Be Legitimately Justified Based on Clinical Grounds.**

Prior to 2019, Washington law recognized that insurers could engage in either "unfair discrimination" or "fair discrimination."  *See e.g.,* RCW 48.30.300.  The law made a distinction between fair discrimination (typically considered medical underwriting)[7] and what was considered to be "unfair" discrimination.[8]  *See id.*  "Fair discrimination" had to be supported by "bona fide statistical differences in risk or exposure." RCW 48.30.300(2).  But after RCW 48.43.0128 became law, even "fair discrimination" was no longer permitted in non-grandfathered health plans.  *See id.*

Instead, the only legitimate justification for discriminatory treatment that is otherwise outlawed by RCW 48.43.0128(1) is when the discriminatory treatment is grounded in "appropriately utilize[ed] medical management techniques."

---

[7] Medical underwriting is a process through which insurers gather information about and consider an individual's or group of individuals' medical history to classify the risks involved with offering enrollment in a health plan and/or adjusting the premium pricing for the individual or group. *See e.g., Cole's Wexford Hotel v. Highmark, Inc.,* 2017 U.S. Dist. LEXIS 129181, *10 (W.D. Pa. Aug. 15, 2017).

[8] For example, the Americans with Disabilities Act did not apply to insurers that engaged in medical underwriting.  *See* 42 U.S.C. § 12201; Blake Decl., ¶27.  In contrast, the ACA and RCW 48.43.0128 have no "safe harbor" that permits medical underwriting.  *See id.,* ¶36; 42 U.S.C. § 18116(a); RCW 48.43.0128.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

RCW 48.43.0128(2).   The Washington Office of the Insurance Commissioner has articulated this standard: "Appropriate use of medical management techniques includes use of evidence based criteria for determining whether a service or benefit is medically necessary and clinically appropriate."  WAC 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(3).  This standard is consistent with the ACA.  *See* 45 C.F.R. § 156.125(a), (c) (only clinical reasons can justify otherwise discriminatory benefit design); 81 Fed. Reg. 31405 ("Scientific or medical reasons can justify distinctions based on the grounds enumerated in Section 1557"); 81 Fed. Reg. 31408 ("Arbitrary exclusions based on protected traits are prohibited" but "[w]here differential treatment is justified by scientific or medical evidence, such treatment will not be considered discriminatory").  An insurer's reasons cannot be arbitrary or a pretext for discrimination.  *Id.  See* also, FAQ No. 45 ("[C]overed entities must use neutral, nondiscriminatory criteria in making decisions as to which benefits and services to cover, and their health coverage cannot operate in a discriminatory manner") found at: www.hhs.gov/civil-rights/for-individuals/section-1557/1557faqs/index.html#General%20Questions (last visited 5/30/23).  It is also consistent with long-standing anti-discrimination law that requires, in the medical context, that legitimate, non-discriminatory reasons be grounded in medical science.  *Sumes v. Andres*, 938 F. Supp. 9, 11 (1996); *Woolfolk v. Duncan*, 872 F. Supp. 1381, 1390 (E.D. Pa. 1995); *Glanz v. Vernick*, 750 F. Supp. 39, 46 (D. Mass. 1990) ("bona fide medical reasons" are the only basis under which providers may withhold medical benefits based upon a patient's disability).

Importantly, "proffered justifications cannot rely on overbroad generalizations and cannot be hypothesized or invented post hoc in response to litigation."  81 Fed. Reg. 31409.  In other words, Kaiser must show that its claimed justifications were ***actually considered*** when the Exclusion was put in place and reviewed.  *Id.*  It cannot simply offer the justifications in post-litigation discovery responses, as occurred here.  *See* Hamburger

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 22
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

Decl., ¶2, *Exh. O*, pp. 3-5, 7.  Kaiser utterly fails to articulate any clinical justification that was actually identified and considered when the exclusion was established or when it was narrowed over time. *See id.*  It offers only *post hoc* litigation-driven reasons (that have nothing to do with clinical considerations anyway).

In sum, a health insurer must have a genuine ***clinical*** reason for a particular benefit design that results in disparate treatment based upon disability.  Any other justification is not permissible.  And Kaiser has none here.

### 2.   Kaiser Offers No Clinical Justification for the Hearing Exclusion.

Kaiser concedes that the Exclusion was put in place and maintained without any clinical review of the medical efficacy and appropriateness of coverage of hearing aids, as required in RCW 48.43.0128(2).  For example, Kaiser's Rule 30(b)(6) witness admitted that of the four "high level" reasons provided by Kaiser for the Exclusion, ***none*** were grounded in any actual medical science.   *Exh. B*,  pp. 34:3-51:24; *Exh. O*,  pp. 3-5.  Prescription hearing aids were never reviewed by the Medical Policy Committee or MTAC within either Kaiser or GHC. *See Exh. H.*  Indeed, there is no clinical policy related to hearing aids *at all*.[9]  Hamburger Decl., ¶2.  Compared to the extensive clinical review of CIs, BAHAs and other hearing technology, the complete absence of any similar analysis related to prescription hearing aids is telling.

By comparison, prescription medical devices required to treat other health impairments are covered when medically necessary. *See id., Exh. A*, p. 17.  Kaiser covers diabetes pumps, wheelchairs, hospital beds, insulin pumps, and therapeutic shoes among many other forms of medical devices. *Id.*  Indeed, for orthopedic devices, "[i]tems

---

[9] The only policy related to hearing aids was established in 2021, purportedly in response to RCW 48.43.0128, but only addresses "benefit application."  The policy does not review the clinical efficacy or medical management techniques related to hearing aids. *See Exh.* Q.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 23
[Case No. 2:17-cv-01611-RSL]

attached to an impaired body segment for the purpose of …assisting in the restoration or improvement of its function" are covered.  *See id.*  Kaiser offers no clinical basis for excluding medical devices that accomplish similar "restoration and improvement of function" when used to treat hearing impairment.

In sum, Kaiser's approach to the Hearing Exclusion did not change with the passage of RCW 48.43.0128.  That was Kaiser's error.  When RCW 48.43.0128 passed, Kaiser should have evaluated whether there was any clinical basis for the Exclusion. Kaiser failed to engage in any such evaluation.  *See Exh. H.*  In any event, there is no clinical justification for the Exclusion.  *See Exh. O.*

"But for" the Exclusion, prescription hearing aids would be covered under the Durable Medical Equipment benefit as a medically necessary medical device or prosthetic.  There is no dispute that hearing aids can be medically necessary and effective at treating hearing impairments.  And hearing aids are the key medical device needed by Plaintiffs Schmitt and O.L. to treat their hearing disabilities.  The Exclusion, intentionally imposed by Kaiser, treats hearing disabled insureds – as a group – differently from other insureds by excluding the predominant medical device needed to treat their condition.

**G.     Kaiser Breaches its Contracts When It Violates RCW 48.43.0128.**

Washington courts recognize that insurance laws are incorporated into the health insurance contract between insurers like Kaiser and its enrollees.  *See* Dkt. No. 81, pp. 2-3, *citing O.S.T.*, 181 Wn.2d at 707 (breach of insurance contract claim brought to enforce Washington Mental Health Parity Act); *Brown v. Snohomish Cty. Physicians Corp.*, 120 Wn.2d 747, 753, 845 P.2d 334 (1993); RCW 48.18.200(2).  RCW 48.18.510 is explicit: "Any insurance policy … which contains any condition or provision not in compliance with the requirements of this code, shall not be rendered invalid thereby, but shall be

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 24
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code."). As a result, RCW 48.43.0128 enters into the contract to render the Hearing Exclusion void.  Dkt. No. 81, p. 2.  At this risk of piling on, Kaiser's insurance contract confirms this:

> 8.  Compliance with Law.
>
> The Group and Group Health [now Kaiser] shall comply with all applicable state and federal laws and regulations in performance of this Agreement.

Dkt. No. 18-1, p. 3 out of 66 (emphasis added); Dkt. No. 65, *Appendix A*, p. 65; Hamburger Decl., *Exh. A*, pp. 2-3, 45.[10]

Kaiser has a contractual duty to ensure that both the design and administration of its health plans are non-discriminatory.  It breached that duty when it designed and distributed to Plaintiffs Schmitt and O.L. policies that excluded all coverage for prescription hearing aids.  It further breached that contractual duty to Plaintiff O.L. when it denied her claims for hearing aids and related hearing treatment and supplies under the discriminatory exclusion.

## V.  CONCLUSION

The Court should declare that, as a matter of law, Kaiser's Hearing Exclusion is illegal, void and unenforceable with respect to Plaintiffs Schmitt and O.L. since April 17, 2019, the effective date of RCW 48.43.0128.  In turn, and as a matter of law, Kaiser breached its contracts of insurance with Plaintiff O.L. by denying coverage of her hearing aids and hearing-related treatment during this time. Plaintiffs will move for appropriate

---

[10] Kaiser further contractually promised not to "discriminate on the basis of…disability.  Group Health [now Kaiser] does not exclude people or treat them differently because of … disability…."  Dkt. No. 18-1 pp. 65-66 out of 66; Hamburger Decl., *Exh. A*, p. 8) ("[Kaiser] does not discriminate on the basis of physical or mental disabilities in its …. services").

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

injunctive relief, should the Court rule in their favor and after the pending class certification motion is decided.

DATED:  June 1, 2023.

*I certify that the foregoing contains 7,597 words, in compliance with the Local Civil Rules.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

  */s/ Eleanor Hamburger*
Eleanor Hamburger (WSBA #26478)
Richard E. Spoonemore (WSBA #21833)
Daniel S. Gross (WSBA #23992)
3101 Western Avenue, Suite 350
Seattle, WA  98121
Tel.  (206) 223-0303; Fax (206) 223-0246
Email:   ehamburger@sylaw.com
            rspoonemore@sylaw.com
            dgross@sylaw.com

Of Counsel:

  */s/ John F. Waldo*
John F. Waldo, *Pro Hac Vice*
Law Office of John F. Waldo
2108 McDuffie St.
Houston, TX 77019
Tel. (206) 849-5009
Email: johnfwaldo@hotmail.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – 26
[Case No. 2:17-cv-01611-RSL]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246